## WILDER,[1] ASSESSOR, *v.* INTER-ISLAND STEAM NAVIGATION COMPANY, LIMITED.

ERROR TO THE SUPREME COURT OF THE TERRITORY OF HAWAII.

No. 30. Submitted October 22, 1908.—Decided November 30, 1908.

Section 4536, Rev. Stat., providing that seamen's wages shall not be subject to attachment or arrestment, is to be construed in the light of other provisions of the same title and is to be liberally interpreted with a view to protect the seamen; and, as so construed, that section prevents the seizure of wages not only by attachment before, but execution after, judgment, and such wages cannot be seized under § 2118 of the Laws of Hawaii.

*Quære* and not decided whether the act of June 9, 1874, c. 259, 18 Stat. 64, repealed § 4536, Rev. Stat., so far as vessels engaged in the coastwise trade are concerned.

17 Hawaii, 416, affirmed.

THE facts are stated in the opinion.

---

[1] Substituted for Holt, Assessor.

*Mr. Charles R. Hemenway*, Attorney General of the Territory of Hawaii, and *Mr. Mason F. Prosser*, for plaintiff in error:

Sections 2117, 2121, Rev. Laws of Hawaii, though providing for garnishment, are in fact proceedings supplementary to execution as known in the various States of the Union.

Section 4536, Rev. Stat., does not exempt wages of seamen from execution or in proceedings supplementary thereto.

Seamen's wages by the act in question are exempt from arrestment or attachment, but not from execution. For definition of "arrestment"—a term used in Scotch law—see Bouvier, 169; Erskine, Inst. 3, 6, 1; 1, 2, 12. There is a clear distinction, however, between attachment and execution. *Thompson* v. *Baltimore*, 33 Maryland, 312; *Johnson* v. *Foran*, 58 Maryland, 148.

The above provision of the Revised Statutes does not apply to cases where judgment has been recovered against the defendant in a court of competent jurisdiction. It is only intended to prevent hasty judgment against defendants, who by reason of the fact that they are seamen and not properly versed in business methods, would be only too apt to allow claims against them to go by default. For the reason stated, in cases in the United States courts the strong arm and protection of the law is by this statute thrown around a class of persons notoriously improvident. But where such persons, even though they be seamen, and within the protection of § 4536, have been proceeded against according to law, and a valid claim against them has been adjudicated by a court of competent jurisdiction, the protection of the statute in question can no longer avail and prevent the collection of a just debt legally proven. *Telles* v. *Lynde*, 47 Fed. Rep. 912; *In re The Queen*, 93 Fed. Rep. 834, 835; *Eddy* v. *O'Hara*, 132 Massachusetts, 56; *White* v. *Dunn*, 134 Massachusetts, 271; *Ayer* v. *Brown*, 77 Maine, 195.

*Mr. A. Lewis, Junior*, for defendant in error.

MR. JUSTICE DAY delivered the opinion of the court.

This case is one of a number of similar cases arising within

the Territory of Hawaii, and is brought here for the purpose of settling the liability of seamen's wages to seizure after judgment by attachment or proceedings in aid of execution. The Inter-Island Steam Navigation Company, defendant in error, was directed by order and judgment of the district magistrate of Honolulu to pay into court on account of a judgment rendered in favor of plaintiff in error against one A. Tullet the sum of $65.00. Tullet is a seaman, being master of the steamer *Keauhou,* plying between ports within the Territory. The sum of $65.00 was due to Tullet from the Inter-Island Steam Navigation Company for wages for the months of January and February, 1906. The judgment was recovered against Tullet on September 5, 1905, for the sum of $120.38 and costs. An execution was issued thereon and returned unsatisfied. Upon affidavit being filed an order was issued attaching the sum of $65.00, due in manner aforesaid from the navigation company to Tullet. The navigation company filed an answer setting forth that Tullet was an American seaman in the employ of the company, and that the money attached was due to Tullet as wages, and under § 4536 of the Revised Statutes of the United States the same were not subject to arrestment nor attachment, and that the territorial court had no jurisdiction in the premises. The lower court held that the wages could be attached in this manner. This judgment was reversed in the Supreme Court of Hawaii.

The laws of Hawaii regulating attachments in cases, such as are now under consideration, authorize proceedings supplementary to execution, as follows (chap. 135, Laws 1905):

"SEC. 2118. *Attachment of debts, order.*—It shall be lawful for a judge of any court upon the *ex parte* application of such judgment creditor either before or after such oral examination and upon affidavit by the judgment creditor or his attorney stating that judgment has been recovered and that it is still unsatisfied, and to what amount, and that any other person is indebted to the judgment debtor and is within the jurisdiction, to order that all debts owing or accruing from such third person

(hereinafter called the 'garnishee') to the judgment debtor, shall be attached to answer the judgment debt, and by the same or any subsequent order it may be ordered that the garnishee shall appear before the judge to show cause why he should not pay the judgment creditor the debt due from him to the judgment debtor or so much thereof as may be sufficient to satisfy the judgment debt; provided that the judge may in his discretion, refuse to interfere when from the smallness of the amount to be recovered, or of the debt sought to be attached or otherwise, the remedy sought would be worthless or vexatious."

It was under this section of the Hawaiian statute that the order was made for the payment of the judgment out of the wages due to Tullet, and the question for decision in this case is: Can such an order be made consistently with the maritime law as declared in the Revised Statutes of the United States? The section of the statute construed in the Supreme Court of Hawaii is 4536, which provides:

"No wages due or accruing to any seaman or apprentice shall be subject to attachment or arrestment from any court; and every payment of wages to a seaman or apprentice shall be valid in law, notwithstanding any previous sale or assignment of wages, or of any attachment, incumbrance or arrestment thereon; and no assignment or sale of wages, or of salvage, made prior to the accruing thereof, shall bind the party making the same, except such advance securities as are authorized by this title."

This section was first enacted into the statutes of the United States in 1872, and was § 61 of the act of June 7, 1872, entitled "An Act to authorize the Appointment of Shipping-commissioners by the several Circuit Courts of the United States, to superintend the Shipping and Discharge of Seamen engaged in Merchant Ships belonging to the United States, and for the further Protection of Seamen." 17 Stat. 262, 276. It afterwards became, in the revision of 1874, § 4536, Rev. Stat. This section appears to have been copied from § 233 of the 17 and 18 Victoria, 1854, chap. 104, which act provides:

"No wages due òr accruing to any seaman or apprentice shall be subject to attachment or arrestment from any court; and every payment of wages to a seaman or apprentice shall be valid in law, notwithstanding any previous sale or assignment of such wages, or of any attachment, incumbrance, or arrestment thereon; and no assignment or sale of such wages, or of salvage made prior to the accruing thereof, shall bind the party making the same, and no power of attorney or authority for the receipt of any such wages shall be irrevocable."

We have been unable to discover any English case construing this statute, and none has been called to our attention. In MacLachlan on Merchant Shipping (4th ed.), 231, that author states the effect of the statute to be to except seamen's wages from liability to attachment by a judgment creditor, as payment of such wages is valid, notwithstanding any previous sale or assignment thereof, or any attachment, incumbrance, or arrestment thereon. In this country the cases, state and Federal, in which this statute has been under consideration are not in accord. In *Telles* v. *Lynde*, 47 Fed. Rep. 912, and *The Queen*, 93 Fed. Rep. 834, the Circuit Court in the Ninth Circuit reached the conclusion that the statute did not prevent the seizure of seamen's wages after judgment upon proceedings in aid of execution, although the seamen's wages were not liable to attachment in advance of judgment.

The question was very fully considered by Judge Benedict in the case of *McCarty and another* v. *Steam Propeller City of New Bedford*, 4 Fed. Rep. 818. In that case Judge Benedict held the view that the statute of 17 and 18 Victoria, above cited, was but declaratory of the law of England as it theretofore existed, and that in view of the remedies given in the United States courts in admiralty, and the provisions of the Federal statutes enacted in reference to the recovery and protection of the wages of seamen, there was no jurisdiction in the state courts to garnishee the wages of seamen at the instance of a creditor.

With Judge Benedict's opinion before him, Mr. Justice Gray, then of the Supreme Judicial Court of Massachusetts, in the case of *Eddy* v. *O'Hara*, 132 Massachusetts, 56, said that the court, although recognizing the elaborate and forcible argument of Judge Benedict, had not been able to satisfy itself that such an exemption from attachment had ever been recognized, except as created or limited by express statutes or ordinances. The learned justice conceded that a determination of that question was not necessary to the decision then made, because the court held that the trustee in foreign attachment, having been compelled by process from the admiralty court to pay the amount of wages, could not be charged again for the same sum. In the subsequent case of *White* v. *Dunne*, 134 Massachusetts, 271, the question was directly presented, and the former opinion of Mr. Justice Gray, in 132 Massachusetts, 56, was approved; and it was held that the wages of seamen engaged in the coastwise trade (the act of June 9, 1874, c. 260, 18 Stat. 64, being construed to exempt coastwise trading vessels from the provisions of the act of 1872, which included what is now § 4536) are subject to attachment by the trustee process. The court expressed regret at its inability to agree with the Circuit Court of the United States for the Southern District of New York, evidently referring to Judge Benedict's opinion above cited, and expressed the opinion that no practical injustice would grow out of the conflict, as the Supreme Judicial Court of Massachusetts had recently held, in *Eddy* v. *O'Hara*, *supra*, that where the wages of seamen had been obliged to be paid by a decree in admiralty, a party could not again be charged under attachment proceedings, and the court expressed the opinion that, as the wages were paid upon the judgment upon which trustee process had issued a court of admiralty of the United States would not compel the owners to pay a second time.

In the case of *The City of New Bedford*, 20 Fed. Rep. 57, Judge Brown sitting in admiralty in the Southern District of New York, adhered to the views expressed by Judge Benedict

in *McCarty* v. *City of New Bedford, supra,* notwithstanding the decision in *Eddy* v. *O'Hara,* 132 Massachusetts, 56, *supra,* but held that a compulsory payment under garnishee process in Massachusetts, under principles of comity, should be recognized in the admiralty court. In *Ross* v. *Bourne,* 14 Fed. Rep. 858, Judge Nelson, sitting in the United States District Court in Massachusetts, held that a suit at law against a seaman, wherein his wages had been attached by a trustee process but not yet paid, would not bar the seaman's recovery of the whole wages by a suit in admiralty. Upon appeal to the Circuit Court of the same case (*Ross* v. *Bourne,* 17 Fed. Rep. 703), Judge Lowell said that "he did not dissent" from the learned opinion of Mr. Justice Gray, in *Eddy* v. *O'Hara, supra,* but held that such an attachment proceeding should be respected out of comity only, and that comity did not require actions in favor of seamen in admiralty to be hung up to await the dilatory proceedings of an attachment suit at common law.

From this conflict of views upon the subject we turn to the consideration of the section (4536) itself. We may premise that no contention was made in the Supreme Court of Hawaii, or in the assignments of error or argument in this court, that § 4536 was inapplicable because the steamship company was engaged wholly in the coastwise trade. This removes any question on that subject from the case and renders it unnecessary to decide whether the act of 1874, c. 259, 18 Stat. 64, had the effect to repeal § 4536, so far as vessels thus engaged are concerned. In the first clause of § 4536 it is provided that no wages due or accruing to any seamen shall be subject to attachment or arrestment from any court, and it is the contention of the plaintiff in error that the words "attachment" or "arrestment" only forbid such proceedings before judgment, but do not protect such wages from proceedings in attachment after judgment. Undoubtedly the word "attachment," as ordinarily understood in American law, has reference to a writ the object of which is to hold property to abide the order of the court for the payment of a judgment in the event

the debt shall be established. And as Mr. Justice Alvey says, in delivering the opinion of the Supreme Court of Maryland, *Thomson* v. *Baltimore and Susquehanna Steam Co.*, 33 Maryland, 312, 318:

"An attachment has but few of the attributes of an execution; the execution contemplated by the statute being the judicial process for obtaining the debt or damage recovered by judgment, and final in its character, while the attachment is but *mesne* process, liable at any time to be dissolved, and the judgment upon which may or may not affect the property seized."

"Arrestment," a word derived from the English statute, is a word of Scotch origin, and derived from the Scottish law, and thus defined by Bouvier:

"The order of a judge, by which he who is debtor in a movable obligation to the arrester's debtor is prohibited to make payment or delivery till the debt due to the arrester be paid or secured. Erskine, Inst. 3, 6, 1; 1, 2, 12. Where arrestment proceeds on a depending action it may be loosed by the common debtor's giving security to the arrester for his debt, in the event it shall be found due."

And in the Century Dictionary it is defined to be:

"A process by which a creditor may attach money or movable property which a third person holds for behoof of his debtor. It bears a general resemblance to foreign attachment by the custom of London."

Neither of the words used in the statute, "attachment" or "arrestment," considered literally, have reference to executions or proceedings in aid of execution to subject property to the payment of judgments, but refer, as we have seen, to the process of holding property to abide the judgment. But we are of opinion that this statute is not to be too narrowly construed, but rather to be liberally interpreted with a view to affecting the protection intended to be extended to a class of persons whose improvidence and prodigality have led to legislative provisions in their favor, and which has made them,

as Mr. Justice Story declared, "the wards of the admiralty."
*Harden* v. *Gordon,* 2 Mason, 541.

We think too that the section is to be construed in the light
of and in connection with the. other provisions of the Title,
of which it. is a part.   And we may notice that after providing
against attachment or arrestment of wages, this very section
goes on to enact that payment of wages to seamen shall be
valid, notwithstanding any previous sale or assignment, or
any attachment, incumbrance, or arrestment thereon; and that
no assignment or sale of wages made prior to the accruing
thereof shall bind the party making the same, except such
advance securities as are authorized by this statute.   When
we look to the provisions of the Title we see that the field of
"advanced securities" for which assignment is authorized is
very narrow indeed.    3 United States Compiled Statutes,
§§ 3079 *et seq.*   It is made unlawful to pay any seaman his
wages in advance, and an allotment of his wages is permitted
only to grandparents, parents, wives, or children, or, under
regulations of the Commissioner of Navigation, made with the
approval of the Secretary of the Treasury, not to exceed one
month's wages to a creditor in liquidation of a just debt for
board or clothing.   And it is provided that no allotment note
shall be valid unless signed and approved by the shipping
commissioner. ᐧ This statute has been held a valid enactment
(*Patterson* v. *Bark Eudora,* 190 U. S. 169) as to advancements.

Section 4536, therefore, has the effect of not only securing
the wages of the seaman from direct attachment or arrest-
ment, but further prevents the assignment or sale of his wages,
except in the limited cases we have mentioned, and makes the
payment of such wages valid notwithstanding any "attach-
ment, incumbrance or arrestment thereon."

It seems to be clearly inferable from these provisions that
wages which have thus been carefully conserved to the seaman
were not intended to be subject to seizure by attachment,
either before or after judgment.   .

Furthermore, there are other sections in the Title which

strongly support the conclusion that it was not intended that seamen's wages should be seized upon execution or attachment to collect judgments rendered at common law. Section 4535 provides that no seaman shall forfeit his lien upon the ship or be deprived of any remedy for the recovery of his wages by an agreement other than is provided for by this Title "Loss of lien." 3 U. S. Comp. Stat. § 3082. Section 4530 provides for the payment of seamen's wages, one-half at every port where such vessel shall load or deliver its cargo, and when the voyage is ended the remainder of his wages, as provided in § 4529. Section 4546 provides for the summons of the master when wages are unpaid within ten days to show cause why process should not issue against the vessel according to the rules of courts of admiralty. Section 4547 provides for process against a vessel in case a seaman's wages are not paid, or the master does not show that the same are otherwise "satisfied or forfeited," and all the seamen having like cause of complaint may be joined as complainants in a single action.

We think that these provisions, read in connection with § 4536, necessitate the conclusion that it was intended not only to prevent the seaman from disposing of his wages by assignments or otherwise, but to preclude the right to compel a forced assignment, by garnishee or other similar process, which would interfere with the remedy in admiralty for the recovery of his wages by condemnation of the ship. These provisions would be defeated if the seaman's wages, to be recovered at the end of the voyage, could be at once seized by an execution or attachment after judgment in an action at law. The evident purpose of the Federal statutes, that the seaman shall have his remedy in admiralty, would be defeated, and the seaman, in many cases, be turned ashore with nothing in his pocket, because of judgments seizing his wages, rendered, it may be, upon improvident contracts, from which it was the design and very purpose of the admiralty law to afford him protection.

"Ordinarily," says Judge Nelson, in *Ross* v. *Bourne*, 14

Fed. Rep. 862, *supra,* "the sailor's only means of subsistence on shore are his wages earned at sea. If these may be stopped by an attachment suit the instant his ship is moored to the wharf, a new hardship is added to a vocation already subject to its full share of the ills of life."

We think that § 4536, construed in the light of the other provisions of the same Title, prevents the seizure of the seaman's wages, not only by writs of attachment issued before judgment, but extends the like protection from proceedings in aid of execution, or writs of attachments, such as are authorized by the Hawaiian statutes, after judgment.

Finding no error in the decision of the Supreme Court of Hawaii, the same is

*Affirmed.*