### THE AMELIA.

(District Court, S. D. Alabama, S. D. December 22, 1910.)

#### No. 1,271.

EXEMPTIONS (§ 48*)—SEAMAN'S WAGES — ATTACHMENT IN STATE COURT — EFFECT—"SEAMAN."

Rev. St. § 4536 (U. S. Comp. St. 1901, p. 3082), provides that no wages due or accruing to any seaman shall be subject to attachment or arrest from any court, and that every payment of wages to a seaman shall be valid at law notwithstanding any attachment thereof. *Held*, that such section was applicable as well to a seaman operating on coastwise vessels as on merchant vessels generally, and hence it was no answer to a libel in admiralty against a tug engaged in the coasting trade for a seaman's wages earned thereon that the wages had been attached by garnishment.

[Ed. Note.—For other cases, see Exemptions, Cent. Dig. § 70; Dec. Dig. § 48.*

For other definitions, see Words and Phrases, vol. 7, pp. 6374–6375.]

In Admiralty. Libel by Andrew Nodop against the tug Amelia for seaman's wages. Decree for libelant.

J. W. Tharp, for libelant.
Pillans, Hanaw & Pillans, for claimant.

TOULMIN, District Judge. The libelant was a seaman on the tug Amelia, running in the Mobile river and bay and Mississippi sound, in the state of Mississippi, being thus engaged in the coastwise trade. He claims the sum of $53.32 is due him for wages for services rendered in September, 1910. The respondent does not deny the claim

for wages, but the owner and claimant of the tug refused to pay the claim, and sets up that libelant's wages had been attached by garnishment process served upon him for $46.55. The process had been issued in accordance with the usual course of procedure in the courts of Alabama. Libelant thereupon filed his libel for the recovery of his full wages, and caused the tug to be seized by the marshal. The sum claimed in the garnishment proceeding did not cover the full amount of libelant's wages, and the claimant in his answer in this cause set up the above facts, and paid into court the balance of the wages by him admitted to be due to the libelant at the time of the filing of the answer.

The question submitted to the court is whether the wages earned by a seaman in the coastwise trade of the United States are subject to arrest by garnishment process at the instance of a creditor of the seaman in an action at law brought in a state court, and whether, therefore, the sum of $46.55 arrested by the garnishment process shall be allowed as a credit to the claimant in this action. Section 4536 of the Revised Statutes (U. S. Comp. St. 1901, p. 3082) of the United States provides:

"That no wages due or accruing to any seaman shall be subject to attachment or arrestment from any court; and every payment of wages to a seaman shall be valid in law notwithstanding any attachment thereon."

This provision is general in its terms, and is applicable to all wages earned by seamen whatever the nature of the voyage, unless said provision conflicts with, or may vary from, some act of Congress passed since the 1st day of December, 1873, and which has not been repealed or so amended as to avoid any conflict with or variance from said provision, or unless it shall be considered that any such conflicting act has no application to the question involved in this cause. Said section 4536 was a part of the shipping commissioner's act (Act June 7, 1872, c. 322, 17 Stat. 262). Act June 9, 1874, c. 260, 18 Stat. 64 (U. S. Comp. St. 1901, p. 3064), struck from Act June 7, 1872, every provision therein relative to coastwise vessels, except those in the coastwise trade between the Atlantic and Pacific coasts, and the lake-going trade and trade between the United States and British North American possessions. In 1878 the Revised Statutes of the United States were adopted under an act of Congress. By it the act of June 7, 1872, including the provisions of said section 4536, became a part of the Revised Statutes, under title 53, Merchant Seamen, c. 3. This merchant seamen statute is a general and permanent one, dealing with the shipping of seamen, their wages, and effects, discharge, protection, relief, etc. We find in this statute no distinction or discrimination made between the seamen engaged in merchant ships belonging to the United States as to their protection in the coastwise trade generally and the particular coastwise trade mentioned in the act of June 9, 1874. Is not this fact strongly persuasive that Congress intended to put all seamen engaged in the coastwise trade on the same footing as to their treatment, and their protection in reference to their wages? When, as suggested by the Supreme Court, we liberally interpret the statute with a view to effecting the protection intended to be extended to a

class of persons "whose improvidence and prodigality have led to legislative provisions in their favor," and when we read section 4536 in connection with and "construe it in the light of the provisions of the title of which it is a part," it seems to me clear that it was intended by the statute to prevent the seizure of the seaman's wages under attachment or arrestment. Such I understand to be the substance and effect of the opinion of the Supreme Court of the United States in Wilder v. Inter-Island Nav. Co., 211 U. S. 239, 29 Sup. Ct. 58, 53 L. Ed. 164.

In Patterson v. The Eudora, 190 U. S. 169, 23 Sup. Ct. 821, 47 L. Ed. 1002, the Supreme Court said:

"Contracts with sailors for their services are exceptional in their character, and may be subjected to special restrictions for the purpose of securing the full and safe carrying on of commerce on the water."

And:

"If the necessities of the public justify the enforcement of a sailor's contract by exceptional means, justice requires that the rights of the sailor be in like manner protected."

Congress no doubt recognized this just rule when it passed Act Aug. 19, 1890, c. 801, 26 Stat. 320 (U. S. Comp. St. 1901, p. 3065), which provides that:

"When a crew is shipped for an American vessel in the coastwise trade, * * * an agreement shall be made with each seaman engaged as one of such crew in the same manner as is provided by the Revised Statutes, * * * and such seamen shall be discharged and receive their wages as provided by section * * *"

—and also by other sections named of which 4536 is one.

However, in the case of McCarty et al. v. Steam Propeller City of New York, in the United States District Court for the Southern District of New York (4 Fed. 818), Benedict, J., held that an attachment suit wherein a seaman's wages had been attached was not a valid plea to a libel in the admiralty court for the same wages, but that the libelant should have judgment for the whole wages due him. His opinion is an able and logical one, and his decision is sustained by such weighty and just considerations as to my mind are conclusive that, irrespective of any statute, seamen's wages under the maritime law ought to be held exempt from attachment in suits at common law.

In Ross v. Bourne (D. C.) 14 Fed. 858, Judge Nelson held that "the right of a seaman to sue in the admiralty court for his wages is not taken away or suspended by an attachment of his wages in an action at law," and referring to thirteenth admiralty rule [U. S. Comp. St. 1901, p. 2867] said:

"No one would for a moment contend that the attachment suit should have the effect to deprive the seaman of his lien on the vessel and freight."

The protection to the seaman extends to proceedings in aid of execution after judgment as well as to attachment before judgment. Wilder v. Inter-Island Navigation Co., supra.

Decree for libelant for amount of wages due.