## SHILMAN v. UNITED STATES et al.

No. 69, Docket 20737.

Circuit Court of Appeals, Second Circuit.

Dec. 4, 1947.

Writ of Certiorari Denied Feb. 16, 1948.

See 68 S.Ct. 608.

William L. Standard, of New York City (Louis R. Harolds and Herman Rosenfeld, both of New York City, of counsel), for libellant-appellant.

John F. X. McGohey, U.S.Atty., of New York City (Martin J. Norris, of New York City, of counsel), for respondents-appellees.

Before L. HAND, AUGUSTUS N. HAND, and FRANK, Circuit Judges.

## AUGUSTUS N. HAND, Circuit Judge.

The libellant sues in admiralty to recover $200 wages earned by him as a member of the crew of the merchant vessel Eli Whitney. The vessel was owned by the United States and operated by Grace Line, Inc., as agent, pursuant to the usual General Agency Agreement. The libellant was employed on the vessel as a wiper and while so employed earned the sum of $406.86 as wages between May 25, 1943, and August 1, 1943.

On or about July 31, 1943, while the vessel was in the Port of Tunisia, North Africa, then an active theatre of war, the libellant was arrested by personnel of the United States Army on the charge that he had violated the 93rd Article of War because he had unlawfully taken an adding machine from the office of the French Navy on July 25, 1943. On August 2, 1943, he was arraigned and tried in Tunisia upon this charge before a Special Court Martial, found guilty and sentenced to pay a fine of $200 to the United States and to be confined at hard labor for three months. He served his prison sentence, but never paid the fine. On November 16, 1943, he received from the respondent Grace Line, Inc., $206.86, the amount of his wages, less the fine of $200, to recover which he filed a libel in admiralty both against the United States and Grace Line, Inc. The respondents filed an answer denying any right of recovery because of libellant's indebtedness for the unpaid fine to an amount equivalent to the balance of his wages. The District Judge sustained this defense and rendered an opinion dismissing the libel as against each respondent. From the decree entered on this decision the libellant appeals. We think the decree should be reversed as against the United States, but affirmed as to the Grace Line, Inc.

It seems clear from the statutes applicable to seamen's wages that the United States cannot lawfully withhold any part of a seaman's wages because of such a fine as was imposed upon the libellant in the case at bar.

A seaman making foreign voyages is entitled to his pay within twenty-four hours after the cargo is discharged, or within four days after the seaman is discharged, whichever happens first. Failure to pay without sufficient cause subjects the master or owner to an extra payment of double wages for each day's delay. 46 U.S.C.A. § 596.

In port, a seaman is entitled to demand one-half of his unpaid wages, and when his employment is at an end, he must receive the remainder of the wages due. So important did Congress feel this provision was, that the section was expressly made applicable not only to American seamen, but also to foreign vessels in United States harbors. 46 U.S.C.A. § 597.

Except as expressly provided by law, a seaman cannot give up any right to wages, or any remedy for the recovery of same, even by agreement. 46 U.S.C.A. § 600.

His wages are not subject to attachment or arrestment, even by court action, except that a court is given the limited power to order wages withheld, only for the support of a wife and minor children; and no advance assignment of wages is valid, except for payment of an allotment to a relative, made out in the manner authorized and prescribed by law. 46 U.S.C.A. § 601.

Section 682, 46 U.S.C.A., provides that where a seaman is discharged in a foreign port, it must be in the presence of the United States Consul, and, even before the actual signing off, the master must make "payment of the wages which may then be due said seaman."

Section 683, 46 U.S.C.A., provides that if the consul fails to require all the wages to be paid to the seaman when there is to be a discharge in a foreign port, the consul himself becomes liable to the United States "for the full amount thereof."

Section 685, 46 U.S.C.A. requires the consul to make sure that there is paid at the time of discharge all wages which are due (plus extra wages, in the event of certain violations of the seaman's contract).

The above sections look towards payment to the seaman by his employer, at the termination of the employment, of all of

his earned wages, without any deductions except those which are expressly authorized by statute.

The section prohibiting "attachment or arrestment" of seaman's wages came before the Supreme Court for consideration in Wilder v. Inter-Island Navigation Co., 211 U.S. 239, 29 S.Ct. 58, 61, 53 L.Ed. 164, 15 Ann.Cas. 127. There a judgment had been rendered against a seaman in a local court of Hawaii and it was sought to reach his wages in proceedings in aid of an execution upon the judgment which had been returned unsatisfied. The Supreme Court in an opinion by Mr. Justice Day, after discussing the authorities, held that the act applied and that the wages could not be seized under the statute of the Territory. In reaching this conclusion the Justice said:

"But we are of opinion that this statute is not to be too narrowly construed, but rather to be liberally interpreted with a view to effecting the protection intended to be extended to a class of persons whose improvidence and prodigality have led to legislative provisions in their favor, and which has made them, as Mr. Justice Story declared, 'the wards of the admiralty.' Harden v. Gordon, Fed.Cas. No. 6,047, 2 Mason 541.

"We think, too, that the section is to be construed in the light of and in connection with the other provisions of the Title of which it is a part. * * *

"Section 4536 therefore has the effect of not only securing the wages of the seaman from direct attachment or arrestment, but further prevents the assignment or sale of his wages, except in the limited cases we have mentioned, and makes the payment of such wages valid notwithstanding any 'attachment, incumbrance or arrestment thereon.'

"It seems to be clearly inferable from these provisions that wages which have thus been carefully conserved to the seaman were not intended to be subject to seizure by attachment, either before or after judgment.

* * * * * *

"We think that these provisions, read in connection with § 4536, necessitate the conclusion that it was intended not only to prevent the seaman from disposing of his wages by assignments or otherwise, but to preclude the right to compel a forced assignment, by garnishee or other similar process, which would interfere with the remedy in admiralty for the recovery of his wages by condemnation of the ship. These provisions would be defeated if the seaman's wages, to be recovered at the end of the voyage, could be at once seized by an execution or attachment after judgment in an action at law. The evident purpose of the Federal statutes, that the seaman shall have his remedy in admiralty, would be defeated, and the seaman, in many cases, be turned ashore with nothing in his pocket, because of judgments seizing his wages, rendered, it may be, upon improvident contracts, from which it was the design and very purpose of the admiralty law to afford him protection."

While it is the general rule that a seaman discharged in a foreign port is entitled to receive his wages "without any deduction whatever" of claims against him whether of his employer or of third parties, there are exceptions recognized by the maritime law and now embodied in statutes. For example when a seaman refuses without reasonable cause to join his vessel, or absents himself therefrom without leave, the expense of hiring a substitute may be deducted from his wages. 46 U.S.C.A. § 701(2). Where a seaman wilfully damages his vessel, or embezzles, or wilfully damages any of the stores or cargo, the loss sustained may be deducted, 46 U.S.C.A. § 701(7); where he is convicted of smuggling and loss is occasioned to the master or owner, a sufficient amount of his wages may be retained to satisfy the loss. 46 U.S.C.A. § 701(8). Other special grounds of forfeiture of wages have been provided by statute such as unjustifiable complaints of unseaworthiness of the vessel and her provisions, in which cases the expense occasioned by a survey may be deducted, 46 U.S.C.A. §§ 659 and 663. Similarly certain deductions for expenditures during the voyage for clothing for the benefit of seamen from the ship's so-called "slop chest" are allowable both under the mari-

time law and the existing Act of Congress. 46 U.S.C.A. § 670.

The cases cited by the appellees in support of a set off of $200 all fall within the category of expenses incurred on behalf of the ship in connection with the voyage. Sometimes they have related to hiring a substitute for a deserting seaman or for securing his return; sometimes for making the vessel good out of a seaman's wages for medical expenses occasioned by his assault on a member of the crew; at other times they have been deductions for a smuggling of goods which subjected the vessel to jeopardy, or for allowing a stowaway to be on board. Swanson et al. v. Torry et al., 4 Cir., 25 F.2d 835; The Ellen Little, D. C.Mass., 246 F. 151; The W. F. Babcock, 2 Cir., 85 F. 978; The T. F. Whiton, D.C.S. D.N.Y., Fed.Cas.No.13,849; Snell et al. v. The Independence, D.C.E.D.Pa., Fed.Cas. No.13,139; Scott v. Russell, D.C.S.D.N.Y., Fed.Cas.No.12,546; Magee v. The Moss, D.C.E.D.Pa., Fed.Cas.No.8944.

In the case at bar the respondents are not seeking to recover any expenditure caused during the course of the voyage, or for the benefit of the ship, but to avoid payment to a seaman on his discharge of the wages he had earned which the statute says must be then paid. There is no evidence that the ship or her owner suffered any loss by reason of the stealing of the adding machine from the French Authorities which indeed, according to the statement made at the time of the argument of the appeal, was returned to the owner on the same day. It seems evident that under the statutes the libellant was entitled to the payment of the full amount of the wages he had earned on August 1, 1943 when his employment terminated and that no authority existed which justified withholding any part of the wages in anticipation of a court martial fine which was subsequently imposed, or to assert a set off in the present suit for the balance of libellant's wages.

The contention of the respondents that under 31 U.S.C.A. § 227 a set off is permitted of the fine of $200 imposed by the court martial is clearly unsound. In the first place that section in terms would only apply if the fine had been reduced to a judgment. Hines v. United States, 70 App. D.C. 206, 105 F.2d 85. In addition to this, the specific statutes, safeguarding seamen's wages to which we have already referred, would preclude the application of the general provisions of 31 U.S.C.A. § 227 even if the claim of the United States had been reduced to judgment. We must also take into account the broad language of 50 U.S. C.A. War, Appendix, § 1291 which is a still further muniment of seamen and reads as follows:

" * * * members of crews * * * employed on United States or foreign flag vessels as employees of the United States through the War Shipping Administration shall, with respect to * * * (3) collection of wages * * * have all of the rights, benefits, exemptions, privileges, and liabilities, under law applicable to citizens of the United States employed as seamen on privately owned and operated American vessels."

In view of the foregoing we think that the libellant is entitled to recover the balance of his wages from the United States without the deduction of a set off and that the decree dismissing his claim as against the latter must be reversed accordingly. His claim against Grace Line, Inc. stands however on a different footing and was properly dismissed because it arose out of a contract of employment by the United States as a disclosed principal and therefore may not be asserted against its agent Grace Line, Inc.

The Shipping Articles are the basis of the contract of the libellant for his wages. They were signed by the master and the seamen. The printed form containing the particulars of the engagements of the crew recited the name of the ship, her official number, her registry and tonnage and set forth "War Shipping Administration," and on the line below "Grace Line, Agents," under the printed designation of "Registered Managing Owner or Manager." All these descriptive terms were printed under the words "ARTICLES OF AGREEMENT BETWEEN MASTER AND SEAMEN IN THE MERCHANT SERVICE OF THE UNITED STATES" set out in bold type.

There can be no doubt that such an agreement if made with another than the United States would not render the agent for a disclosed principal individually liable.

Restatement Agency, Section 320, provides that: "Unless otherwise agreed, a person making or purporting to make a contract with another as agent for a disclosed principal, does not become a party to the contract."

The General Agency Agreement between the United States acting through the Administrator, War Shipping Administration, and Grace Line, Inc., provided in Article 1 that:

"The United States appoints the General Agent as its agent and not as an independent contractor, to manage and conduct the business of vessels assigned to it by the United States from time to time."

We can discover no reason for attributing the liability of a principal to Grace Line, Inc. under such an "Agency Agreement."

But it is said that the libellant was an employee of the Grace Line under the ruling of the Supreme Court in Hust v. Moore-McCormack Lines, 328 U. S. 707, 66 S.Ct. 1218, 90 L.Ed. 1534. That decision was rendered in an action to recover under the Jones Act 46 U.S.C.A. § 688, damages arising from negligence imputed to the operating agent. In Caldarola v. Eckert, 332 U.S. 155, 67 S.Ct. 1569, a stevedore who sued the general agent in the New York Courts for injuries caused by a defective boom on the vessel on which he was working was denied recovery from the agent. In neither the Hust nor the Caldarola decisions did a majority of the court hold the agent to be owner of the vessel pro hac vice. In the first case he was only held to be subject to the obligations of an employer so as to be liable to seamen in tort for acts of negligence connected with the operation of the vessel. In each case the court was highly divided but in neither did it decide that the agent was so far the employer as to be liable to the seamen for their wages or other contractual obligations.

Decree dismissing the libel is reversed as to the United States and affirmed as to Grace Line, Inc.