RANDOLFO MARTY PÉREZ, Plaintiff and Appellee, *v.* TEMÍSTOCLES J. RAMÍREZ CUERDA, Defendant and Appellant.

No. 10929. Argued October 16, 1953.—Decided January 28, 1954.

*Martín Avilés Bracero* for appellant. *José Castro Figueroa* for appellee.

MR. JUSTICE ORTIZ delivered the opinion of the Court.

Dr. Randolfo Marty Pérez filed a complaint for the recovery of money against Dr. Temístocles J. Ramírez Cuerda in the San Juan Section of the former District Court. Plaintiff attached certain articles and instruments used in the medical profession, alleging that they belonged to defendant. The latter filed a motion "specifying the properties which are exempt from execution under the law and praying for an order for their delivery." In that motion defendant alleged that his professional specialty was surgery; that under subd. 4, § 249 of the Code of Civil Procedure, "the instruments and chest of a surgeon, physician, surveyor, and dentist, necessary to the exercise of their profession, with their scientific and professional libraries; the law or professional libraries and office furniture of attorneys, counselors, physicians and judges, and the libraries of ministers of the gospel," are exempt from execution and that certain articles attached, which are specified in the motion, were necessary to the practice of the profession of surgery and are therefore exempt from execution.

A hearing was held on that motion at which both parties offered oral and documentary evidence. The lower court finally entered an order dismissing the motion in question on the ground that the evidence had established that the instru-

ments and articles which are the subject of the motion did not belong to defendant but were the exclusive property of the Hospital Sagrado Corazón, and that, therefore, defendant could not claim exemption of those articles. Defendant appealed to this Court from that order.

■ The order of the San Juan Court is, in fact, erroneous. Although it is true that the evidence established that the instruments and articles specified were not kept in defendant's private office but in the Hospital Sagrado Corazón, it also appears clearly from the evidence that the Hospital Sagrado Corazón is the exclusive and personal property of defendant; that the Hospital Sagrado Corazón is not a corporation, or partnership, or independent, juridical entity, but merely the designation or firm name of a clinic which is defendant's personal property, and that both the clinic and its name as well as the property found therein belong to defendant. We are not concerned, as in the case of *Melón Hnos.* v. *Muñiz*, 47 P.R.R. 87, with attached property belonging to a juridical entity other than defendant, but with property in an establishment owned by the defendant, even though that establishment had a special name under which defendant carried on his professional activities. Defendant testified that he was the sole owner of the hospital, which statement was corroborated by a document admitted in evidence, which is a contract made on September 16, 1949 by the parties hereto. In that contract plaintiff and defendant covenanted in part as follows:

"FIRST: That in October 1947 the appearing parties agreed to organize a partnership for the purpose of establishing and operating a HOSPITAL, and in FEBRUARY 1948 they formally did so and founded the hospital known as "HOSPITAL SAGRADO CORAZÓN," which has since then been located and operated at 1408 Ponce de León Avenue, Stop 21, Santurce, Puerto Rico;

"SECOND: That Temístocles J. Ramírez Cuerda acknowledges in this act, and so does Randolfo Marty Pérez, that the latter contributed toward the said partnership the sum of TEN THOUSAND THREE HUNDRED AND FORTY-TWO (10,342) DOLLARS,

legal currency of the United States of America, for the organization and operation of the "Hospital Sagrado Corazón";

"THIRD: That the said hospital has been duly equipped with beds, furniture and other appliances and effects which are necessary in a hospital of its kind, the capital contributed by Dr. Randolfo Marty Pérez as well as Dr. T. J. Ramírez Cuerda having been invested for that purpose;

"FOURTH: That in *May 1948* the appearing parties agreed to dissolve, and did dissolve, the said partnership, on condition that Dr. Marty Pérez would occupy, free of charge, a professional office in the hospital premises to care for his private patients. It was further agreed that the whole proceeds accruing from the hospitalization of those patients would be credited to Dr. Marty Pérez in partial payment of his credit, up to the amount contributed by him toward the organization and operation of the Hospital Sagrado Corazón;

"FIFTH: Lastly, the appearing parties declare that since May 1948, when the dissolution took place, the agreement made by them has been in full operation, *Dr. T. J. Ramírez Cuerda being since then the sole owner of the 'Hospital Sagrado Corazón.'* The latter in turn acknowledges that Dr. R. Marty Pérez is a preferred creditor of the said hospital, together with all its equipment, for a sum which will be set forth hereinafter, and Dr. R. Marty Pérez acknowledges on his part that since that date all his rights and actions have been assigned and transferred in favor of the other appearing party;

"The appearing parties wishing now to ratify the said dissolution of the partnership, to acknowledge and ratify the assignment and transfer of the consequential rights and actions, the formal acknowledgment of the outstanding debt up to this date, and the other conditions and stipulations of the contract, they do so hereby subject to the following conditions:

"*First*: The appearing parties expressly ratify the dissolution of the partnership constituted in May 1948 for the organization, equipment and operation of the 'Hospital Sagrado Corazón' and Dr. Randolfo Marty ratifies the assignment and transfer of all his rights and actions in the said hospital in favor of Dr. Temístocles J. Ramírez Cuerda, and furthermore, he ASSIGNS AND TRANSFERS hereby all rights and actions and all joint ownership which he may have and has in the 'Hospital Sagrado Corazón' *in favor of Dr. T. J. Ramírez Cuerda;*

"*Second*: The appearing parties expressly acknowledge that the said assignment and transfer was made for the agreed price of TEN THOUSAND THREE HUNDRED AND FORTY-TWO (10,342) DOLLARS, legal currency of the United States of America, namely, the amount contributed by Dr. Ramírez Cuerda towards the organization, equipment and operation of said hospital;

"*Third*: Dr. Randolfo Marty Pérez expressly acknowledges that he has received up to this date the sum of ONE THOUSAND FIFTY-ONE (1,051) DOLLARS, which is the proceeds from the hospitalization of his private patients in the hospital in question, his debt being thus reduced to the sum of NINE THOUSAND TWO HUNDRED AND NINETY ONE (9,291) DOLLARS, and Dr. Ramírez Cuerda expressly acknowledges and confesses that he is owing and owes up to this date, to Dr. Marty Pérez, for the said account, namely, the price of the sale of his share in the Hospital Sagrado Corazón, the said sum of NINE THOUSAND TWO HUNDRED AND NINETY ONE (9,291) DOLLARS, United States legal currency;

"*Fourth*: As part of the agreement to dissolve the partnership, it is agreed that Dr. Marty Pérez shall have the right to occupy an office in the hospital premises to care for his private patients, and Dr. Ramírez Cuerda, for his part, binds himself to continue paying Dr. Marty Pérez the whole proceeds accruing from the hospitalization of the private patients of Dr. Marty Pérez in the said Hospital Sagrado Corazón;

"*Fifth*: It is further agreed that the said indebtedness of $9,291 will be paid off in such manner as may be agreed upon as long as the said Hospital Sagrado Corazón is in operation, but it is agreed and stipulated that in the event said hospital is closed and its operation discontinued, the amount of the debt outstanding on such date in favor of Dr. Marty Pérez by virtue of this assignment and transfer shall be considered as a preferred credit over any other debt, and all the equipment, furniture, beds and appliances of the said hospital shall be liable, first, for the balance of the outstanding debt, that is, of the liquidation resulting after crediting the whole proceeds from the hospitalization which may be pending at the closing or cessation of operation of the Hospital;..." (Italics ours.)

Plaintiff himself admitted in the contract that the Hospital Sagrado Corazón was defendant's exclusive property,

which statement was clearly ratified by the evidence offered before the court. Defendant so testified personally. Plaintiff merely stated that the attached property belonged to the hospital. However, the hospital in turn belonged to the defendant. The order of the Court of San Juan was erroneous.

██ The lower court made no pronouncement as to whether or not the articles whose exemption from execution is sought were necessary to the defendant in the practice of his profession of surgeon. However, there was uncontroverted evidence on the specific use and intrinsic need for those instruments. Before determining the applicability to the case at bar of subdivision 4, § 249 of the Code of Civil Procedure, *supra*, it is proper to adopt a general rule. As stated in 22 Am. Jur. 7, § 4, "Exemption laws are the product of an enlightened public policy, which seeks to afford some measure of protection to the family of an unfortunate debtor, as well as to the debtor himself, and incidentally to the public. They are framed not merely in benevolence, but also in the interest of the state in the personal well-being of its citizens. Their purpose is the humane and generous one of securing debtors from unjust and harassing litigation and of protecting them in those pursuits which are necessary to the existence and well-being of the community. By allowing the debtor to retain certain property free from molestation or appropriation by creditors, they thereby extend to him an opportunity of self-support so that he will not become a burden upon the public. Every man, even the extravagant and improvident, owes a first duty to those immediately depending upon him. Also, it is in the interest of the state that no citizen shall be reduced to a condition of destitution so as to be prevented from prosecuting useful industrial employments for which he may be fitted, and that families shall not be deprived by extravagance or misfortune of the shelter and comforts necessary to health and activity. Such laws encourage industry and thrift and the building up of

homes by placing beyond the reach of creditors such property as the debtor may require to prosecute his labor or business, whatever his walk in life or his occupation may be. No doubt it is better that some creditor go unpaid than to take away from the debtor and his family that which the lawmakers believe is essential for their education, culture, and spiritual upbuilding. But exemption laws are not intended to aid individuals to avoid payment of their honest debts and should not become a means of enabling them to escape their obligations arising after they have ceased to come properly within the purview of the exemption statute." .

In view of those principles of high social policy, exemption laws should be liberally construed in favor of debtors and favorably to the objects and purposes of the exemption. *Quiñones* v. *Gutiérrez et al.*, 29 P.R.R. 718; *Laguna et al.* v. *Quiñones*, 23 P.R.R. 358; *Wilder* v. *Inter-Island Navigation Co.*, 211 U. S. 239; *Holmes* v. *Marshall*, 145 Cal. 777; *In re Estate of L. McManus*, 87 Cal. 292; 22 Am. Jur. 9. In *Laguna et al.* v. *Quiñones, supra,* it was stated in part as follows:

"It was held by the Supreme Court of California in the case of *In re Estate of L. McManus,* 87 Cal. 292, 10 L.R.A. 567, that statutes exempting personal property from execution forced sale are remedial in character and evidently intended to protect the debtor and enable him to follow his vocation and thus earn a support for himself and family. The general rule now is that such statutes are to be liberally construed to carry into effect the humane purpose designed by the lawmaker. Not only are the statutes given a liberal construction but the words 'tools and implements' have been held to apply to articles which a strict technical construction would exclude."

Where there is doubt as to whether certain property is exempt or not, the doubt should be resolved in favor of the exemption. *Hoyt* v. *Pullman*, 152 Pac. 386. Exemptions should not be strictly construed. However, exemptions should not be enlarged by the courts beyond the statutory

provision. 22 Am. Jur. 10. We should always bear in mind the test of reasonableness, that is, the number of exempt articles should not be excessive to the point of transcending the limits of a reasonable need.

■ The term "necessary instruments" employed in § 249 does not imply that such instruments must be indispensable or absolutely necessary to the debtor in his work (22 Am. Jur. 30), but it is enough that the instruments be reasonably necessary or convenient or suitable for the prosecution of the work advantageously and usefully. *Laguna et al.* v. *Quiñones, supra,* 22 Am. Jur. 30. Generally, those articles without which the debtor can not work at his trade must be within the exemption. 2 A.L.R. 818; 9 A.L.R. 1020; 36 A.L.R. 669; 52 A.L.R. 826. Furthermore, the concept of the term "necessary instruments" should not have a fixed and narrow meaning. Progress in modern medical science implies a wider connotation as respects the instruments which may be necessary to a surgeon at present.

Applying the foregoing principles to the specific circumstances of the case at bar, it is alleged in defendant's motion for exemption from execution that defendant is á surgeon and that certain instruments are necessary to him in the practice of his specialty. The instruments in question are the following: one operating and treatment table; one obstetrical table; two instrument tables; one utensil stand; one autoclave set; one BPE emergency light; two small germicidal lamps; six bassinets; one oxygen indicator; one incubator; two instrument cabinets; two kickbuckets; two taburets or stools; one immersion receptacle; two irrigators; one wheelchair; one instrument sterilizer; two small anesthesia tables; two boxes for instruments and supplies; a small refrigerator and one suction apparatus. Defendant elaborated on the essential need of those articles to a surgeon. Those articles are indeed reasonably necessary to the practice

of surgery within the actual realities of that profession, and such instruments should be exempt from execution.

In *De Coster* v. *Nenno et al.*, 213 N. W. 538, the Supreme Court of Minnesota held that the equipment and apparatus in a modern hospital, which is the exclusive property of a surgeon, should not be exempt from attachment and execution. It is stated that it is very expensive to equip a modern hospital, and that it could not have been the legislative intent to exempt from execution all the equipment of such a hospital, since otherwise there would be no limit to the amount of money invested in a hospital and to the exemption claimed. However, that case actually limits the exemption to a reasonable amount, rejecting the exemption as to the entire equipment of a hospital. It is not held that the fact that certain specific articles are kept in a hospital implies the disallowance of the exemption. In the case at bar, exemption is not sought as to all the properties and articles in the Hospital Sagrado Corazón. The petition for exemption includes a limited number of essential basic instruments which are reasonably necessary to the practice of surgery.

█ It could be argued that the contract between the parties entails a waiver of exemption on the part of the debtor and defendant. It is stated in that contract that plaintiff and defendant were joint owners of the furnishings in the hospital, including the equipment and instruments in question, and that plaintiff sells and assigns to defendant his share in those properties. It was stated in the contract that "Dr. T. J. Ramírez Cuerda is the sole owner of the 'Hospital Sagrado Corazón.' The latter in turn acknowledges that Dr. R. Marty Pérez is a preferred creditor of the hospital, together with all its equipment, for a sum which will be set forth hereinafter," and that "the amount of the debt ... shall be considered as a preferred credit over any other debt, and all the equipment, furniture, beds and appliances of the said hospital shall be liable, first, for the balance of the outstanding debt."

It could be argued that the debtor voluntarily placed the property attached herein within the reach of a judicial claim by plaintiff, including the foreclosure proceeding, thereby giving rise to a waiver of exemption. However, the generally accepted rule, which we approve, is that a debtor's waiver of his exemption right, by stipulation in an executory contract to be performed in the future, is absolutely void. 35 C.J.S. 133; 22 Am. Jur. 99. In *Industrial Loan and Investment Co.* v. *Superior Court*, 209 Pac. 360, 180 Cal. 546, it was held that an *express* waiver of an exemption made in advance by a debtor in a note on which the claim was based, was void. After indicating that, generally, an exemption is a personal privilege of the debtor, it was stated as follows:

"...But this rule does not apply to stipulations in an executory contract such as that sued on here. As to such cases the rule is that the debtor cannot waive the privilege of claiming the exemption in advance. This rule is based on the theory that exemption laws are made for the benefit of the debtor and his family, and that it is against public policy for him to waive any benefits of the law in advance of the time when it is necessary for him to do so. If it were not for this rule, it is said, creditors would insist on inserting the clause waiving exemption laws in every executory contract. These would usually be made at a time when the debtor was in need of money, and would be enforceable at some time in the future when, perhaps, he or his family would require the exemption. By doing so he would waive practically all the benefits of the exemption law. We approve of this doctrine, [prohibiting waivers] and hold that such a waiver cannot be enforced. *This rule has been followed by all the states except Pennsylvania.*" (Italics ours.)

Actually, the rule which we now ratify is inspired by the purpose of maintaining the integrity of and safeguarding the fundamental public policy consecrated in exemption laws; of protecting the debtor's family and the debtor himself, against his improvidence lack of foresight, and to prevent the beneficiaries under the law from tearing down with their

own hands the foundations of the exemption structure which the community has erected through legislation. ·

Section 249 of our Code of Civil Procedure, after establishing the exemption under litigation, provides as follows by way of exception:

"...No article or species of property mentioned in this section is exempt from execution *issued upon a judgment* recovered for its price, or upon a mortgage thereon." (Italics ours.)

There is no room to claim exemption of certain articles against a judgment based on a claim for the purchase price of those articles. However, § 249 expressly requires that, in order to defeat the exemption, it is necessary that the claim for the price be previously reduced to judgment. The exception does not grow out of the claim itself but of the judgment. The purpose of the distinction is clear. A debtor should not be deprived of the use of certain articles necessary and essential to earn his living solely because there has been established a claim whose validity, virtuality, and authenticity are still in doubt. A previous judgment gives the claim authenticity and makes it more feasible to deprive the debtor of the exemption. In the case at bar, plaintiff's claim has not as yet been reduced to a judgment and, therefore, the provision contained in § 249 is not applicable.

Incidentally, § 249 does not recognize an exemption against the holder of a mortgage on the same property. The contract between the parties does not constitute a mortgage. It could not be argued that the language employed in the contract gives rise to a preferred lien on the properties, thereby defeating the exemption, since the only lien authorized by law as an exception to the exemption is the mortgage. The determination of a class of lien excludes all other classes of liens as a means of defeating the exemption.

The order appealed from is set aside and rendered ineffective, and instead the defendant's motion of April 23, 1951, claiming exemption of the attachment levied on "prop-

erties exempt from execution," is· sustained, and the case remanded to the San Juan Part of the Superior Court for further proceedings not inconsistent with this opinion.

Mr. Justice Negrón Fernández did not participate herein.

Mr. Justice Sifre and Mr. Justice Pérez Pimentel concur in the result.