William SIPE, Individually and on behalf
of all other persons who are similarly
situated, Plaintiff,

v.

AMERADA HESS CORPORATION,
Defendant.

Ralph NOTARGIACOMO, Individually
and on behalf of all other persons who
are similarly situated, Plaintiff,

v.

UNITED STATES LINES, INC.,
Defendant.

Donald HENDERSON, Individually and
on behalf of all other persons who are
similarly situated, Plaintiff,

v.

SEA–LAND SERVICE, INC., Defendant.

Civ. A. Nos. 80–732 to 80–734.

United States District Court,
D. New Jersey.

Aug. 5, 1981.

Phillips & Cappiello, P. C., New York City
by George J. Cappiello, Jr., New York City,
Waters, McPherson, Hudzin & McNeill, P.
A., Jersey City, N. J. by Richard Venino,
Jersey City, N. J., for plaintiffs.

Wilentz, Goldman & Spitzer by Milton B.
Conford, Woodbridge, N. J., for defendant
Amerada Hess Corp.

Wiley, Malehorn & Sirota by Stephen B.
Wiley, Convent, N. J., for defendant United
States Lines, Inc.

Meyner & Landis by Jeffrey Reiner,
Newark, N. J., Pepper, Hamilton & Scheetz,
P. A. by Peter Hearn, Gail Granoff, Phila-
delphia, Pa., for defendant Sea-Land Ser-
vice, Inc.

## OPINION

STERN, District Judge.

These consolidated cases present the nov-
el question whether a New Jersey tax law
requiring employers of merchant seamen to
withhold monies from their employees'
wages and turn the funds over to the state
is in violation of the federal Shipping Com-
missioners Act, 46 U.S.C. § 601.

## I. FACTS AND PROCEDURAL HISTORY

On October 5, 1978, plaintiff William Sipe was engaged by defendant Amerada Hess Corporation, a Delaware corporation with its principal place of business in New Jersey, to serve as an able-bodied seaman on the company's vessel The Hess Voyager. Sipe was employed at a regular monthly wage of $874.95 per month plus found and bonus.[1] He was dismissed by Amerada Hess less than four weeks later, on October 31, 1978, at the scheduled conclusion of the voyage. When he received his wages, Sipe discovered that $19.68 had been withheld by Amerada Hess in compliance with New Jersey state tax laws.

Similar experiences were encountered by the other plaintiffs. Donald Henderson, Jr., served as a third mate aboard the S.S. Baltimore from September 23, 1979, to November 7, 1979. The vessel is owned by Sea-Land Service, Inc., a Delaware corporation with its principal place of business in New Jersey. Henderson was paid at a rate of $1,664.18 per month plus found and bonus. When he was discharged at Port Elizabeth, New Jersey, he learned that $.54 had been withheld from his wages by Sea-Land.

Finally, Ralph Notargiacomo served on the S.S. American Legion, a vessel owned and operated by defendant United States Lines, Inc., a Delaware corporation with its principal place of business in New Jersey. After a voyage that lasted from September 1, 1979, to October 16, 1979, Notargiacomo was discharged at the Port of Yokohama, Japan. He was paid an ordinary seaman's wage of $798.33 per month plus found and bonus, and $13.48 was withheld from his earnings by his employer.

On March 14, 1980, plaintiffs, on behalf of themselves and all other seamen similarly situated, filed three separate actions in law and admiralty naming as defendants their respective employers. Each of these complaints was predicated on the same legal theory and sought similar relief, and all three plaintiffs were represented by the same counsel. The complaints alleged that defendants' withholding of monies from plaintiffs' wages for payment to the State of New Jersey[2] violated the federal Shipping Commissioners Act, 46 U.S.C. § 601, which provides "[t]hat no part of the wages due or accruing to a ... seaman ... shall be withheld pursuant to the provisions of the tax laws of any State...." Plaintiffs sought not only reimbursement for the deductions but the penalty set forth in 46 U.S.C. § 596, which requires employers to pay seamen a penalty of two days' pay for every day that full payment has been denied if the monies were withheld "without sufficient cause." Although the individual withholdings of the three plaintiffs constitute small sums of money, the challenged state statute affects thousands of seamen. The refunds and penalties, if applicable to the entire class, would be enormous. Plaintiffs also sought to enjoin the employer defendants from making any future deductions from the wages of their employee seamen for purposes of complying with any New Jersey state tax law.

Because these three cases raised identical legal issues and sought the same forms of relief, this Court, on July 10, 1980, entered

1. Funk and Wagnalls New Standard Dictionary of the English Language defines the word "found" as follows: "Equipped; supported; provided; specif., provided with supplies or food and lodging, as a ship."

2. Plaintiffs' original complaints alleged that the monies withheld from their paychecks were earmarked for the state's temporary disability benefits fund. Subsequently, it became clear that only defendant Amerada Hess Corporation was withholding wages pursuant to the New Jersey Temporary Disability Benefits Law. N.J.Stat.Ann. §§ 43:21–25 et seq. All three

defendants have admitted, however, making deductions in accordance with the New Jersey Unemployment Compensation Law. N.J.Stat. Ann. §§ 43:21–1 et seq. See Tr. of Oct. 14, 1980, at 7–8. The amended complaint reflects these facts. This opinion will concentrate on the propriety of withholding unemployment taxes, which constitute the bulk of the withholdings at issue here. The issue of whether defendant Amerada Hess Corporation may withhold seamen's wages pursuant to the New Jersey Temporary Disability Benefits Law will be dealt with separately. See notes 8, 12 infra.

an order consolidating the three actions for all purposes. Subsequently, in August 1980, separate third-party complaints were filed by defendants United States Lines, Inc., and Amerada Hess Corporation naming as third-party defendants the State of New Jersey; the New Jersey Department of Labor and Industry, and its Commissioner, John J. Horn; and the New Jersey Division of Unemployment and Disability Insurance, and its Director, Joseph S. Viviani (the "state defendants"). In these third-party complaints, defendants Amerada Hess and United States Lines allege that they withheld monies from plaintiffs' earnings as agents for the State of New Jersey, according to the dictates of New Jersey law, and on the advice of New Jersey officials that the withholding was proper. The third-party complaints allege that if the withholding is deemed unlawful, the State of New Jersey, and not the employer shipping companies, must be held liable.

On September 26, 1980, the Court granted a motion by defendant Sea-Land Service, Inc., to join the state defendants named in the third-party complaints as parties defendant pursuant to Fed.R.Civ.P. 19(a).

Defendants now move to dismiss the complaints pursuant to Fed.R.Civ.P. 12(b)(6). The shipowners contend that New Jersey state law is consistent with section 601, and that the withholdings required by New Jersey are authorized by a provision of the federal statute dealing with unemployment compensation laws, 26 U.S.C. § 3305(f). Plaintiffs have filed cross-motions for summary judgment.

## II. STATUTORY BACKGROUND

This case requires an examination of the interplay of federal and state statutes which protect unemployed workers, and a federal statute which protects the rights of merchant seamen.

### A. Federal and State Unemployment Laws

Despite the onslaught of the Great Depression, prior to 1936 few states had enacted unemployment compensation laws. State legislatures feared that the additional burden which such legislation would impose on employers would place their states at a competitive economic disadvantage. Such fears were alleviated in 1936 when Congress passed the Social Security Act. That act established a system which encouraged states to enact unemployment compensation laws. It provided for grants-in-aid to the states to defray the expense of administering unemployment compensation laws (Title III) and the imposition of a uniform payroll tax on all covered employees against which a credit of up to 90 per cent was allowed for contributions made by such employers pursuant to state unemployment compensation statutes (Title IX). Title IX, also called the Federal Unemployment Tax Act, permitted a state to enact whatever type of unemployment law it desired so long as it complied with minimum federal statutory requirements. 26 U.S.C. § 1603.[3] Among the elements of discretion left to each state was the decision whether to require contributions from employees as well as from employers. See Steward v. Davis, 301 U.S. 548, 593–94, 57 S.Ct. 883, 893–94, 81 L.Ed. 1279 (1937).

In its original form, Title IX excluded seamen from its coverage.[4] This situation changed in 1946, when Congress passed a series of amendments to Title III of the Act. The amendments, among other things, modified the definition of "employment" in 26 U.S.C. § 1607(c) to provide for coverage of maritime employees under state unemployment compensation sys-

---

3. These requirements are still in effect. Additional requirements were added in the Employment Security Amendments of 1970, P.L. 91–373.

4. Section 902(c) of the Social Security Act defined employment as "any service performed within the United States by an employee for his employer with the following exceptions: ... (3) services performed as an officer or member of the crew of a vessel on the navigable waters

tems.[5] Congress also enacted 26 U.S.C. § 3305(f), which authorizes the state in which the operations of a vessel are regularly supervised, managed, directed and controlled to extend its unemployment compensation law to, and require contributions with respect to the employment of, seamen on such vessel:

> The Legislature of any State in which a person maintains the operating office, from which the operations of any American vessel operating on navigable waters within and without the United States are ordinarily and regularly supervised, managed, directed and controlled, may require such person and the officers and members of the crew of such vessel to make contributions to its unemployment fund under its State unemployment compensation law approved by the Secretary of Labor under section 3304 and otherwise to comply with its unemployment compensation law with respect to the service performed by an officer or members of the crew on or in connection with such vessel to the same extent and with the same effect as though such service was performed entirely within such State.

The Act was intended to ensure that seamen would not be treated less favorably than other workers. *See* H.R.Rep. No. 2526, 79th Cong., 2d Sess. 9.

New Jersey's first unemployment compensation law was enacted in 1936, L.1936, c. 270 (N.J.Rev.Stat. §§ 43:21–1 *et seq.*). It provided for contributions by *both* employers and employees, and for the withholding of contributions from the employees' wages. The statute followed the federal lead by excluding seamen and their employers from its coverage. *See* N.J.Rev.Stat. § 43:21–19(h)(7)(C). In 1945, the New Jersey legis-

lature amended section 7 of its unemployment compensation law to delete the exclusion of seamen from coverage. L.1945, c. 73, p. 374, Sec. 3. The amendment followed a Supreme Court decision holding that the exemption of employers of seamen from the federal Social Security Act did not operate necessarily to exempt such employers from state unemployment taxes. *Standard Dredging Corp. v. Murphy*, 319 U.S. 306, 63 S.Ct. 1067, 87 L.Ed. 1416 (1943).

N.J.Stat.Ann. § 43:21–7(d) now sets forth the rate at which workers employed by New Jersey employers are taxed for purposes of unemployment compensation and disability,[6] and establishes the means by which the required contributions shall be collected:

> Each employer shall, notwithstanding any provision of law in this State to the contrary, withhold in trust the amount of his workers' contributions from their wages at the time such wages are paid, shall show such deduction on his payroll records, shall furnish such evidence thereof to his workers as the division may prescribe, and shall transmit all such contributions, in addition to his own contributions, to the office of the division in such manner and at such times as may be prescribed.

The statute also imposes a penalty on any employer that fails to withhold the taxes and transfer them to the state treasury:

> If any employer fails to deduct the contributions of any of his workers at the time their wages are paid, or fails to make a deduction therefor at the time wages are paid for the next succeeding payroll period, he alone shall thereafter

of the United States." This section was codified as 26 U.S.C. § 1607(c)(3).

5. 26 U.S.C. § 1607(c) was amended to include "any service . . . on or in connection with an American vessel under a contract of service which is entered into within the United States during the performance of which the vessel docks at a port in the United States, if the employee is employed on and in connection with such vessel when outside the United States. . . ."

6. Although the New Jersey Unemployment Compensation Law refers to employee "contributions" rather than "taxes," there is no question, and defendants concede, that the required "contributions" are "taxes" within the meaning of federal law. *See Steward v. Davis*, 301 U.S. 548, 573–74, 57 S.Ct. 883, 884–85, 81 L.Ed. 1279 (1937); Defendant United States Lines, Inc.'s, Memorandum In Support of Motion to Dismiss at 5 n.1.

be liable for such contributions, and for the purpose of section 43:21–14 of this title, such contributions shall be treated as employer's contributions required from him.

## B. The Shipping Commissioners Act, 46 U.S.C. § 601

The merchant seaman inhabits a unique position in the legal world. The foremost commentator on the law of seamen has written:

It has been truly said that the seaman is the ward of the legislature for perhaps no other class of worker has received from a national legislative body the protection, care and the degree of solicitude as that given to merchant seamen. Practically every phase of the seaman's working conditions aboard ship from the time he first ships out as an apprentice or as an ordinary seaman, to the disposal of his estate at his decease, has been accorded legislative attention.

1 M. Norris, The Law of Seamen 377 (1951). In recognition of their uniquely transient employment, which often requires that they sail on many voyages in the course of a year to ports of call all over the world, the Supreme Court has endorsed the notion that the merchant seaman is a special legal creature. In *Isbrandtsen v. Johnson*, 343 U.S. 779, 782–83, 72 S.Ct. 1011, 1014, 96 L.Ed. 1294 (1952), the Court stated:

Whenever congressional legislation in aid of seamen has been considered here since 1872, this Court has emphasized that such legislation is largely remedial and calls for liberal interpretation in favor of the seamen. The history and scope of the legislation is reviewed in *Aguilar v. Standard Oil Co.*, 318 U.S. 724, 727–735 [63 S.Ct. 930, 932–936, 87 L.Ed. 1107], and notes. "Our historic national policy, both legislative and judicial, points the other way [from burdening seamen.] Congress has generally sought to safeguard seamen's rights." *Garrett v. Moore-McCormack Co.*, 317 U.S. 239, 246 [63 S.Ct. 246, 251, 87 L.Ed. 239]. "[T]he maritime law by inveterate tradition has made the ordi-

nary seaman a member of a favored class. He is a 'ward of the admiralty,' often ignorant and helpless, and so in need of protection against himself as well as others ... Discrimination may thus be rational in respect of remedies for wages." *Warner v. Goltra*, 293 U.S. 155, 162 [55 S.Ct. 46, 49, 79 L.Ed. 254]; *Cortes v. Baltimore Insular Line*, 287 U.S. 367, 375, 377 [53 S.Ct. 173, 175, 176, 77 L.Ed. 368]; *Wilder v. Inter-Island Navigation Co.*, 211 U.S. 239, 246–248 [29 S.Ct. 58, 61–62, 53 L.Ed. 164]; *Patterson v. Bark Eudora*, 190 U.S. 169 [23 S.Ct. 821, 47 L.Ed. 1002]; *Brady v. Daly*, 175 U.S. 148, 155–157 [20 S.Ct. 62, 64–65, 44 L.Ed. 109]. "The ancient characterization of seamen as 'wards of admiralty' is even more accurate now than it was formerly." *Robertson v. Baldwin*, 165 U.S. 275, 287 [17 S.Ct. 326, 331, 41 L.Ed. 715]. *Harden v. Gordon*, 11 Fed.Cas. No. 6,047, 2 Mason (Cir. Ct.Rep.) 541, 556.

The extraordinarily protective attitude evinced by the *Isbrandtsen* decision is nowhere more clearly demonstrated than by the provisions of federal law dealing with seamen's wages. 46 U.S.C. § 601 provides that the payment of wages to a seamen is legally valid notwithstanding any previous sale or assignment of wages or any attachment, encumbrance, or arrestment on the wages. The section relating to attachment and arrestment of seamen's wages was first enacted as part of the Shipping Commissioners Act of 1872. 17 Stat. 262, 276.

In 1959, Congress amended 46 U.S.C. § 601 to protect seamen even further. The amendment provided, in addition to the prohibitions on arrestment and attachment of wages already enacted:

That no part of the wages due or accruing to a master, officer, or any other seaman ... shall be withheld pursuant to the provisions of the tax laws of any State....

Pub.L. 86–263, 73 Stat. 551 (1959). An analysis of the legislative history of that amendment reveals that Congress was confronting an apparent conflict between section 601's prohibition against the arrest-

ment and attachment of seamen's wages and the dictates of recently enacted state laws which required withholding of local taxes from the wages of seamen. The problem had developed precisely because of the peculiar nature of a seaman's employment. Because a seaman commonly would sign on with a ship making numerous stops during the course of extended voyages, his wages would be paid in intervals at the various ports of call at which the ship anchored. It was the practice of steamship operators to pay the crew in the American ports in which the vessel docked, even though the wage was earned in transit between the port of landing and some other port. In the late 1950's, various states and municipalities, eager to obtain a share of these earnings, enacted laws which treated the port of landing as the place where the wage was earned, and required the steamship operators to make withholdings in accordance with local and state income tax laws.

The Senate Committee on Interstate and Foreign Commerce articulated the need for the legislation:

The important maritime states of New York and Massachusetts have recently enacted withholding provisions of their income tax laws that would affect seamen's wages. It is likely that other States will do the same. As a result of the conflict between the Federal law and the State provisions, the shipowners are faced with a staggering potential legal and financial liability if they do not withhold as apparently directed by Title 46, United States Code, Section 601, or if they do withhold as apparently required under State tax laws. Your committee believes legislation is immediately required to resolve this dilemma.

Furthermore, your committee believes that the costly and complex bookkeeping imposed on seamen and shipowners by multiple State withholding laws is all out of proportion to the benefit to the States in the case of seamen. All the more so since it is likely that several States will enact similar withholding provisions. Consequently, the shipowner will have to

prepare withholding tax forms for each seaman for each State for each voyage covering the wages to be paid in each State.

Similarly, the seamen will be subject to multiple taxation by a large number of States and municipalities. The multiple State tax laws imposed upon the seaman will make it impossible for him to handle his tax without employing professional help.

S.Rep. No. 433, 86th Cong., 1st Sess., *reprinted in* [1959] U.S. Code Cong. & Ad. News 2530, 2531.

The Senate Report also included a statement submitted by the Maritime Administration of the Department of Commerce concerning the conflict between federal and state law:

This problem would become even more intricate if several States and municipalities should establish a nonresident tax on wages earned at their respective localities, and require the withholding of taxes from the wages of seamen on money earned as salary or otherwise for the period a vessel would be in waters under the States' jurisdiction. Vessels frequently put into ports of several States on a voyage, and vessels in the coastwise trade stop at many different U.S. ports. In this instance a multiplicity of tax deductions would be made from the wages of the individual seaman who might also be taxed on his income by his State of residence.

*Id.* at 2531–32.

Finally, a statement in the House and Senate Conference Report further clarifies the need for the amendment:

The conferees considered the fact that such State and local withholding tax laws vary widely as to the scope of their coverage and the amounts to be withheld. Consideration of this legislation thus brought out the existence of tax problems of very great complexity involved in the withholding of State and local income and wage taxes as it affects persons whose salaries and wages are derived

from interstate and foreign activities, both in the cases of persons who are residents of the State or locality for whose benefit the tax is withheld, and of persons who are nonresidents of such State or locality.

*Id.* at 2535.

It appears that Congress passed the 1959 amendment to section 601 for the benefit of both shipowners and seamen. Congress recognized that as matters stood, shipowners were placed in a position of legal uncertainty. With the state and federal statutes in apparent conflict, the shipowners faced the unappetizing prospect of withholding wages, which if in violation of section 601 exposed them to the onerous penalty provisions set forth in 46 U.S.C. § 596, or of disregarding state withholding laws, which might result, as is the case in New Jersey today, in liability for their employees' taxes. By enacting section 601, Congress hoped to eliminate this dilemma.

The amendment was also designed to eliminate the almost insurmountable bookkeeping burdens that a hodge-podge of state and local withholding laws would impose on both seamen and shippers. Seamen sailing on lengthy voyages, with many ports of call, were likely to have wages withheld by several jurisdictions; if the seaman sailed on several voyages for different employers during the course of a single year, the incidence of these taxes would multiply accordingly. Thus, prior to the amendment, the helpless "ward of the admiralty," would be forced to recover amounts overwithheld by filing numerous and complicated tax forms at year's end.

## III. ANALYSIS

The determination whether New Jersey may require that wages be withheld from merchant seamen pursuant to N.J.Stat.Ann. § 43:21–7(d) to support the state's unemployment compensation program requires this Court to reconcile two federal statutes discussed above: 26 U.S.C. § 3305(f), which permits states to include seamen in their unemployment programs, and 46 U.S.C. § 601, as amended in 1959, which prohibits the withholding of taxes from a seamen's wages. That determination necessarily involves that most tenuous of judicial exercises, the divining of legislative intent. There are few instances in which a court can proclaim confidently what a legislative body of several hundred individuals collectively intended by the passage of any particular statute. The picture in these cases is typically murky.

Section 3305(f) authorizes the states to enact unemployment compensation laws, apply them to the owners of merchant vessels and their crews, and require contributions from seamen. Whether the legislators who enacted that statute were cognizant that the states might exact a seaman's contributions by employer withholding and whether they "intended" to authorize that procedure is decidedly unclear. Then, too, the legislative history of the 1959 amendment to section 601 indicates that Congress was primarily, if not exclusively, concerned with diffusing the effect of multiple withholdings of state and local *income* taxes. The language of the amendment, however, appears to bar withholding pursuant to *any* state "tax laws."

In reconciling apparent inconsistencies between the statutes, the Court must be mindful of their one clear consistency. Both statutes were intended, and must be interpreted, to benefit merchant seamen. Section 3305(f) was intended to ensure that seamen be eligible to participate in state unemployment compensation programs. The amendment to section 601 was intended to protect seamen from the vagaries of multiple withholding taxes and from having to engage professional assistance to obtain refunds to which they may be entitled.

In view of the remedial nature of both statutes, the Court must also consider the realities which confront seamen today. Every state in the union has an unemployment compensation program in which seamen participate, but only three states—New Jersey, Alaska, and Alabama—require employees to contribute to the support of their unemployment compensation funds. 1B

Unempl.Ins.Rep. (CCH) ¶ 1001.[7] Merchant seamen working for shipowners whose principal place of operation is located in one of the other 47 states are able to qualify for and receive unemployment compensation insurance without contributing in any way to the state fund. Obviously, no money is withheld from the seaman's wages in these instances.[8]

Seamen employed by a New Jersey shipper face burdens beyond those which they face when employed by a company operating out of any other state except Alaska and Alabama. For example, if a seaman works for two shipowners over the course of a year—working six months for a New Jersey concern and six months for one located in a state where seamen are not required to make contributions, such as New York—he would easily obtain eligibility for unemployment compensation insurance in both states. If the seaman became unemployed the following year, he would have the option to apply for benefits in either New York or New Jersey. If he were a resident of a third state, such as Texas, he could apply for benefits in New York, New Jersey, or Texas. He would receive benefits from the treasury of the state in which he files his application. That state, pursuant to the Interstate Maritime Reciprocal Coverage Arrangement, 1B Unempl.Ins.

Rep. (CCH) ¶ 1334, would then obtain reimbursement from the states where the remainder of his eligibility was earned on a *pro rata* basis. Because only three states require contributions, let alone withholding, most seamen, by the itinerant nature of their jobs, would qualify for benefits during the course of a year in at least one state that required no contributions from the seaman.

The existence of withholding provisions in even as few as three states also presents the possibility of multiple overwithholding. The nature of the maritime industry makes it likely that an individual merchant seaman will work for a number of different owners located in a number of different states during the course of a single year.[9] Plaintiffs in these cases, for example—residents of Texas, New York, and New Jersey—experienced voyages on the defendants' ships that lasted from between 26 and 45 days. If a seaman worked in the course of a year for companies located in two or more of the three states which require withholding—New Jersey, Alaska, and Alabama—the seaman would very likely be subject to overwithholding.[10] The amount overwithheld, if properly computed by the seaman, would be recoverable only by filing complicated tax forms at the end of the year. The State of New Jersey has also

---

**7.** New Jersey, Alaska, and Alabama all collect the required contributions from seamen through the withholding mechanism. *See* Tr. of Oct. 14, 1980, at 52.

**8.** A similar situation exists with respect to temporary disability benefits. Only six states provide for temporary disability benefits: California, Hawaii, New York, Rhode Island, Puerto Rico, and New Jersey. Of these, only New Jersey, New York, Hawaii, and Puerto Rico provide for contributions by employees. 1B Unempl.Ins.Rep. (CCH) ¶ 2510.

**9.** This situation might occur without the seaman traveling very far at all. A seaman living in California might spend part of the year working on vessels operated by companies principally located in California. He might spend the balance of the year engaged on a vessel operated out of California by defendant United States Lines, for example, and become subject to the New Jersey withholding tax without ever having set foot in New Jersey.

**10.** Both the State of New Jersey and defendant Amerada Hess Corporation concede that multistate excess withholding is possible. *See* Letter of Deputy Attorney General of the State of New Jersey to Court, October 8, 1980; Reply Brief of defendant Amerada Hess at 5. If additional states enact withholding provisions as part of their unemployment compensation laws, the potential for multi-state excess withholding would be compounded.

Defendants' argument that the potential for multi-state excess withholding has been dealt with adequately by 26 U.S.C. § 3305(f) is not persuasive. Section 3305(f) ensures that seamen will be subject to the local taxes of only one state during the course of a *single* voyage. The statute does not, however, prevent multistate overwithholding when a seaman sails on *multiple* voyages for *different* companies during the course of a year.

conceded that excess deductions could result where a seaman works for more than one employer in the same state during the course of a year. In a letter to the Court of October 8, 1980, the New Jersey Attorney General states:

> In New Jersey, for example, the payroll tax payable by employees is ½% of gross wages up to $6,900, or a maximum annual tax of $34.50. A seaman or other employee who earned more than $6,900 in the employ of two or more New Jersey employers in a calendar year would indeed have more than a total of $34.50 in unemployment taxes deducted from his paychecks and would indeed have to recover the excess through the filing of a refund application under N.J.S.A. 43:21–14.1. The same is presumably true in the two other states that tax employees. See Hess reply brief, p. 4.

With this background in mind, the Court finds that section 601, as amended in 1959, was intended to prohibit the withholding of *all* state and local taxes, of whatever nature, from the wages of a merchant seaman. The language and spirit of section 3305(f), which permits states to include seamen within the scope of their unemployment compensation programs, *and even to require that seamen make contributions to those programs,* is consistent with that section. Section 3305(f) is addressed to the seamen's *participation* in unemployment compensation programs, but does not address the *administrative burdens* which a state may impose on seamen for participation. Section 601, on the other hand, was intended to remedy precisely the type of administrative burden which N.J.Stat.Ann. § 43:21–7 imposes on seamen.[11]

By adopting a clear rule prohibiting the withholding of *all* state and local taxes, this Court will also give effect to another purpose of the 1959 amendment: namely, to establish unambiguous guidelines for the employers of seamen. No longer will defendants have to choose between making the withholdings as required by state law, thereby exposing themselves to the penalty provisions of 46 U.S.C. § 596, and ignoring the dictates of state law, thereby exposing themselves to liability for the full amount of the employees' contribution.

This holding permits New Jersey to continue to require seamen to make contributions to its unemployment compensation fund. The state may not, however, collect these contributions in the form of withholding. This result may make collection more difficult for the state, but section 601 makes clear that the administrative burden of collection should fall primarily on the state, not on the merchant seaman. Accordingly, we hold that 46 U.S.C. § 601 prohibits the State of New Jersey from requiring the employers of merchant seamen to deduct portions of their wages to satisfy the state's Unemployment Compensation Tax. Plaintiff's cross-motions for partial summary judgment are granted.

A permanent injunction will issue restraining the employer defendants from making any future deductions from the wages of their employee seamen for purposes of complying with N.J.Stat.Ann. § 43:21–7(d). The State of New Jersey is also enjoined from enforcing the withholding provisions of that statute.[12]

11. Defendants place great reliance on the language in section 3305(f) requiring shipowners and their employees "otherwise to comply" with a state unemployment compensation law. This reliance is misplaced. There is nothing in either the statute or the legislative history to suggest that this phrase was intended to encompass withholding requirements such that the clearer dictates of section 601 should be avoided. See also 1 M. Norris, The Law of Seamen 395 (1970) ("Local taxes, such as withholding tax, unemployment insurance tax, etc., cannot be deducted from the wages of seamen").

12. As has been stated earlier, only defendant Amerada Hess Corporation withholds seamen's wages in accordance with the New Jersey Temporary Disability Benefits Law, N.J.Stat.Ann. §§ 43:21–25 *et seq.* The potential for burdensome multi-state excess withholding exists with respect to disability taxes. Moreover, in the case of disability taxes, there is no federal statutory provision analogous to 26 U.S.C. § 3305(f) which might arguably sanction such withholdings. Amerada Hess argues that 26 U.S.C. §§ 3305(g) and 3305(h)(2) authorize withholding pursuant to state disability taxes. Those provisions state:

## IV. OTHER REQUESTS FOR RELIEF

■ Plaintiffs' complaints seek the refund from either the employers or the state of all monies withheld from their wages and turned over to the state. In making the deductions, however, the employers, by the terms of N.J.Stat.Ann. § 43:21–7(d), were acting as agents for the state. The monies they withheld have been turned over to the State of New Jersey and deposited in the state treasury. Thus, plaintiffs are barred by the Eleventh Amendment from recovering any of those funds. *See Edelman v. Jordan,* 415 U.S. 651, 663–65, 94 S.Ct. 1347, 1355–57, 39 L.Ed.2d 662 (1974).

■ In addition, plaintiffs seek to invoke the penalty provisions contained in 46 U.S.C. § 596. That section provides:

The master or owner of any vessel making coasting voyages shall pay to every seaman his wages within two days after the termination of the agreement under which he was shipped, or at the time such seaman is discharged, whichever first happens; and in case of vessels making foreign voyages, or from a port on the Atlantic to a port on the Pacific, or vice versa, within twenty-four hours after the cargo has been discharged, or within four days after the seaman has been discharged, whichever first happens; and in all cases the seaman shall be entitled to be paid at the time of his discharge on account of wages a sum equal to one-third part of the balance due him. Every master or owner who refuses or neglects to make payment in the manner hereinbefore mentioned without sufficient cause shall pay to the seaman a sum equal to two days' pay for each and every day during which payment is delayed beyond the respective periods, which sum shall be recoverable as wages in any claim made before the court; but this section shall not apply to masters or owners of any vessel the seamen of which are entitled to share in the profits of the cruise or voyage. This section shall not apply to fishing or whaling vessels or yachts.

The penalty provision applies only when a shipowner makes deductions "without sufficient cause." In this case plaintiffs have not demonstrated that the defendant shipowners withheld their wages without sufficient cause. Defendants were operating under the requisites of a state law which made defendants fully liable for their employees' contributions if they failed to make the deductions. *See* N.J.Stat.Ann. § 43:21–7(d). Defendants also relied on a memorandum issued by the United States Department of Labor in 1960 stating the department's view that withholdings pursuant to

(g) Vessels operated by general agents of United States.—The permission granted by subsection (f) shall apply in the same manner and under the same conditions (including the obligation to comply with all requirements of State unemployment compensation laws) to general agents of the Secretary of Commerce with respect to service performed by officers and members of the crew on or in connection with American vessels—
(1) owned by or bareboat chartered to the United States, and
(2) whose business is conducted by such general agents.
As to any such vessel, the State permitted to require contributions on account of such service shall be the State to which the general agent would make contributions if the vessel were operated for his own account. Such general agents are designated, for this purpose, instrumentalities of the United States neither wholly nor partially owned by it and shall not be exempt from the tax imposed by section 3301. The permission granted by this subsection is subject to the same conditions and limitations as are imposed in subsection (f), except that clause (B) of the second sentence of subsection (b) shall apply.
(h) Requirement by State of contributions. —Any State may, as to service performed on account of which contributions are made pursuant to subsection (g)—
(2) require general agents of the Secretary of Commerce to make contributions under such temporary disability insurance law and to make such deductions from wages or remuneration as are required by such unemployment compensation or temporary disability insurance law.
These provisions apply only to seamen employed by general agents of the Secretary of Commerce and are inapplicable to these cases. Therefore, for the same reasons as enumerated with respect to unemployment compensation laws, withholdings from seamen's wages may not be made in accordance with the New Jersey Temporary Disability Benefits Law.

state unemployment compensation laws were legitimate under federal law. The memorandum stated:

It should also be noted that at the time of the enactment of section 3305(f) ... States·were collecting employee contribu-·tions, from employees subject to these laws, through the withholding device, so that presumably Congress contemplated the extension of the withholding provisions of State unemployment insurance laws to seamen.

Effect of Pub.L. 86–263, Prohibiting Certain Arrestments of Seamen's Wages, on Employee Contributions Under State Unemployment Insurance and Temporary Disability Insurance Laws, Memorandum of United States Department of Labor, January 21, 1960.

We therefore hold that the penalty provisions of 46 U.S.C. § 596 are not applicable.[13]

---

**13.** In plaintiffs' brief in support of their motions for summary judgment, they argue that they are also entitled to a return from the defendant employers of amounts withheld which were in excess of the requisites of the New Jersey State statutes. This claim is not included in the complaints, and the Court expresses no view on the matter.