DONALD HENDERSON, INDIVIDUALLY AND ON BEHALF OF ALL OTHER PERSONS WHO ARE SIMILARLY SITUATED, PLAINTIFFS, v. SEA–LAND SERVICE, INC., STATE OF NEW JERSEY, DEPARTMENT OF LABOR AND INDUSTRY OF THE STATE OF NEW JERSEY, ROGER BODMAN, INDIVIDUALLY AND IN HIS CAPACITY AS COMMISSIONER OF THE DE-PARTMENT OF LABOR AND INDUSTRY, THE DIVISION OF UNEMPLOYMENT AND DISABILITY INSURANCE AND JAMES WARE, INDIVIDUALLY AND IN HIS CAPACITY AS DIRECTOR OF THE DIVISION OF UNEMPLOYMENT AND DISABILITY INSURANCE, DEFENDANTS.

WILLIAM SIPE, INDIVIDUALLY AND ON BEHALF OF ALL OTH-ER PERSONS WHO ARE SIMILARLY SITUATED, PLAIN-TIFFS, v. AMERADA HESS CORPORATION, STATE OF NEW JERSEY, DEPARTMENT OF LABOR AND INDUSTRY OF THE STATE OF NEW JERSEY, ROGER BODMAN, INDIVIDUALLY AND IN HIS CAPACITY AS COMMISSIONER OF THE DE-PARTMENT OF LABOR AND INDUSTRY, THE DIVISION OF UNEMPLOYMENT AND DISABILITY INSURANCE AND JAMES WARE, INDIVIDUALLY AND IN HIS CAPACITY AS DIRECTOR OF THE DIVISION OF UNEMPLOYMENT AND DISABILITY INSURANCE, DEFENDANTS.

RALPH NOTARGIACOMO, INDIVIDUALLY AND ON BEHALF OF ALL OTHER PERSONS WHO ARE SIMILARLY SITUATED, PLAINTIFFS, v. UNITED STATES LINES, INC., STATE OF NEW JERSEY, DEPARTMENT OF LABOR AND INDUSTRY OF THE STATE OF NEW JERSEY, ROGER BODMAN, INDIVIDU-ALLY AND IN HIS CAPACITY AS COMMISSIONER OF THE DEPARTMENT OF LABOR AND INDUSTRY, THE DIVISION OF UNEMPLOYMENT AND DISABILITY INSURANCE AND

1

JAMES WARE, INDIVIDUALLY AND IN HIS CAPACITY AS DIRECTOR OF THE DIVISION OF UNEMPLOYMENT AND DISABILITY INSURANCE, DEFENDANTS.

Superior Court of New Jersey
Law Division Union County

Decided May 18, 1983.

*Richard P. Venino* for plaintiffs, Henderson, et al., Sipe, et al. and Notargiacomo, et al. (*Venino & Venino,* attorneys; *Richard P. Venino* on the brief; *George J. Cappiello,* of counsel; *Phillips & Cappiello, P.C.,* attorneys; *George J. Cappiello* on the brief).

*Jeffrey L. Reiner* for defendant, Sea-Land Service, Inc., (*Meyner & Landis,* attorneys; *Jeffrey L. Reiner* and *Geralyn A. Boccher* on the brief; *Robert J. Attaway, Robert S. Zuckerman, Ann E. Isaac* and *Oliver Trytell,* of counsel).

*Marvin J. Brauth* for defendant, Amerada Hess Corporation, (*Wilentz, Goldman & Spitzer,* attorneys; *Marvin J. Brauth* of counsel and on the brief).

*Stephen B. Wiley* for defendant, United States Lines, Inc., (*Wiley, Malehorn & Sirota,* attorneys; *Stephen B. Wiley* of counsel and *Robert Goldsmith* on the brief).

*Michael S. Bokar,* Deputy Attorney General, for defendants, State of New Jersey, Department of Labor and Industry of the State of New Jersey, Roger Bodman, Individually and in his capacity as Commissioner of the Department of Labor and Industry, The Division of Unemployment and Disability Insurance and James Ware, Individually and in his capacity as Director of the Division of Unemployment and Disability Insurance (*Irwin I. Kimmelman,* Attorney General of New Jersey; *Michael S. Bokar* of counsel and on the brief).

WEISS, J.S.C.

These consolidated cases require this court to construe 26 *U.S.C.A.* § 3305(f) of the Federal Unemployment Tax Act

(FUTA) and the effect, if any, of 46 *U.S.C.A.* § 601 of the Federal Shipping Commissioner's Act on the authority of the State of New Jersey to require the owners and operators of vessels to withhold a statutorily prescribed contribution to the state unemployment compensation fund from the wages of the seamen they employ. Plaintiffs do not deny the obligation of seamen to make contributions to state unemployment compensation programs. They do, however, maintain that § 601 prohibits states from collecting these contributions by imposing a withholding tax. It is claimed that by complying with the withholding provision in *N.J.S.A.* 43:21–7(d)(1), the employer defendants have violated the provisions of 46 *U.S.C.A.* § 596. Therefore, plaintiffs demand statutorily prescribed monetary damages as well as a refund of monies withheld in the past and injunctive relief.

This case was first heard and decided on motion before the United States District Court for the District of New Jersey.[1] That court held that § 601 prohibited defendants from withholding unemployment compensation contributions from the wages of plaintiffs and enjoined defendants from continuing to withhold contributions from the seamen. However, the court did not impose the monetary damages claimed by plaintiffs. Cross appeals were filed. The United States Court of Appeals for the Third Circuit held that the Federal courts were prohibited by the Tax Injunction Act, 28 *U.S.C.A.* § 1341, from exercising jurisdiction over the subject matter. Based upon that conclusion and the principle of comity, the Court of Appeals vacated the District Court's order and remanded the case with orders to dismiss the actions for lack of jurisdiction.[2]

A detailed factual and historical analysis can be found in Judge Stern's opinion in *Sipe v. Amerada Hess Corp. et al.,* 519 *F.Supp.* 781 (D.N.J.1981).

---

[1] See 519 *F.Supp.* 781 (D.N.J.1981).

[2] See 689 *F.*2d 396 (3d Cir.1982).

*Legislative History:*

In 1946 Congress amended the Social Security Act. Under prior law maritime seamen were not covered for unemployment due to the definition of employment in 26 *U.S.C.A.* 1607(c) of the FUTA. The amendment extended coverage under the unemployment compensation program to seamen by changing the definition of employment as follows:

> Under the amendment the term "unemployment" is defined to mean any service performed prior to July 1, 1946, which constituted employment as defined in section 1607 of the Federal Unemployment Tax Act as in force and effect at the time the service was performed; and also to mean any service performed after June 30, 1946, by an employee for the person employing him, irrespective of the citizenship or residence of either, (a) within the United States, or; (b) on or in connection with an American vessel (defined in sec. 1607(n)) under a contract of service entered into within the United States or during the performance of which the vessel touches at a port therein, if the employee is employed on and in connection with the vessel when outside the United States. No substantive change in existing law is effected by the amendment other than the extension of the definition to include service on or in connection with American vessels. This extension is designed to include, with the qualifications noted, all service which is attached to or connected with the vessel (e.g., service by officers and members of the crew and other employees such as those of concessionaires). [H.R.Rep. No. 2526, 79th Cong., reprinted in 1946 *U.S.Code Cong. & Ad.News* 951.]

Having changed the definition of employment, Congress further amended the FUTA by adding § 1606(f).[3] According to the House Report:

> Subsection (f) grants permission to State legislatures to require private operators of American vessels operating on navigable waters within or within and without the United States and the officers and members of the crew of such vessels to comply with State unemployment compensation laws with respect to the service performed by such officers and members of the crew on or in connection with such vessels to the same extent and with the same effect as though such service was performed entirely within the respective State. Only the legislature of the particular State in which the operator maintains the operating office from which the operations of the vessel are ordinarily and regularly supervised, managed, directed, and controlled may require such operator and the officers and members of the crew of such vessel to comply with its unemployment compensation law with respect to the service performed by such officers and members of the crew on or in connection with such vessel. The permission granted by subsection (f) to State legislatures is subject to the

---

[3]§ 1606(f) is currently found in § 3305(f).

condition that such service shall be treated, for purposes of wage credits given employees, like other covered service performed for the operator in such State and is also subject to the conditions imposed by section 1606(b) of the Federal Unemployment Tax Act upon permission to State legislatures to require contributions from instrumentalities of the United States. [Ibid.]

By virtue of the condition imposed by § 1606(b):

The permission granted State legislatures by subsection (f) is not applicable with respect to service performed in the employ of the United States Government or of an instrumentality of the United States which is either wholly owned by the United States or otherwise exempt from the tax imposed by the Federal Unemployment Tax Act. [Ibid.] [4]

In passing these amendments Congress clearly intended to bring maritime seamen within the scope of Federal legislation and to afford them coverage under state statutory schemes for unemployment compensation. Some states require employees to make contributions under their unemployment compensation laws. These contributions are collected by requiring employers to withhold a certain percentage of an employee's wages.[5] However, § 601 was amended in 1959 and extended the prohibition against attachment or arrestment of seamen's wages to include:

... the withholding pursuant to the provisions of *the tax laws* of any state, territory ... of wages due or accruing to seamen.[6] [Emphasis added.]

In light of this amendment, the implementation of subsection (f), which authorizes states to require seamen to comply with their unemployment compensation law, is fraught with hazardous uncertainties in the states that require withholding.[7]

---

[4]This condition was repealed by § 3305(g) and (h) as discussed hereafter.

[5]Currently, New Jersey, pursuant to *N.J.S.A.* 43:21–7(d)(1), Alaska and Alabama require unemployment compensation contributions and New Jersey, Hawaii, New York, California, Rhode Island and Puerto Rico require temporary disability contributions to be withheld.

[6]Plaintiffs claim the phrase "tax laws" was intended to prohibit the withholding of any state tax.

[7]By complying with the state laws that require employers to withhold employee contributions, the defendants are potentially exposed to statutory damages imposed by § 596.

*Analysis:*

The confusion stems primarily from the apparent conflict between the literal terms of § 601 and the inartfully drafted language of subsection (f). Without specifying permissible methods of collection, the amendment provided that seamen shall make "contributions" to and "otherwise comply" with state programs. The problem is further complicated by numerous potential interpretations of the internally inconsistent definition of "contributions" found in 26 *U.S.C.A.* § 3306(g).[8]

As used in § 3305(f), the word contributions refers to both employers and the seamen they employ. The definition in § 3306(g), however, focuses generally on employers. The logical interpretation of § 3306(g) indicates it is intended to prohibit employers from deducting the amount they are required by state law to contribute into an unemployment fund from the remuneration earned by their employees.[9] Its terms do not, however, prohibit employers from withholding the amount the employees themselves are required to contribute into an unemployment fund. Furthermore, it is a general definition applying to all employers covered in that chapter and should not be interpreted to compliment plaintiffs' contention that § 601 was intended to prohibit the withholding of taxes from the wages of seamen for the purposes of unemployment compensation.

Plaintiffs recognize that § 3305(f) authorizes states to require "the officers and members of the crew" to make contributions to

---

[8]"§ 3306(g). For purposes of this chapter, the term 'contributions' means payments required by a state law to be made into an unemployment fund by any person on account of having individuals in his employ, to the extent that such payments are made by him without being deducted or deductible from the remuneration of individuals in his employ."

[9]Similar provisions are found in *N.J.S.A.* 43:21–7(a)(1).

its unemployment fund.[10]  They argue, however, that such contributions must be collected by means other than withholding since § 601, as amended in 1959, expressly prohibits withholding any portion of a seaman's wages pursuant to the "tax laws" of any state.

Although this court recognizes that the contributions made under the New Jersey Unemployment Compensation Law [11] are essentially taxes,[12] regardless of the label attached to them, the issue remains whether or not Congress, in amending § 601 to prohibit withholding pursuant to the "tax laws," intended to prevent unemployment compensation taxes from being withheld from wages of seamen.  It is a well established rule of construction that courts shall, whenever possible, interpret statutes to avoid conflict and to preserve the integrity of each.  *Morton v. Mancari,* 417 *U.S.* 535, 549–551, 94 *S.Ct.* 2474, 2482–2483, 41 *L.Ed.*2d 290 (1974).  Thus in *Watt v. Alaska,* 451 *U.S.* 259, 265–273, 101 *S.Ct.* 1673, 1677–1681, 68 *L.Ed.*2d 80 (1981), the court reasoned that while the starting point of every case involving construction of a statute is the language itself, "the circumstances of the enactment of particular legislation may persuade a court that Congress did not intend words of a common meaning to have their literal effect." *Id.* at 266, 101 *S.Ct.* at 1677.  Furthermore the court, although recognizing the general rule that the more recent of two irreconcilably conflicting statutes governs, declined to find such a direct conflict

----

[10]Subject to the express limitation that only the state in which the operating office which ordinarily and regularly supervises, manages, directs and controls the vessel may require contributions.

[11]*N.J.S.A.* 43:21–1 *et seq.*

[12]This view is consistent with the 3d Circuit Court of Appeals' interpretation in *Sipe v. Amerada Hess,* 689 *F.*2d 396 (3d Cir.1982), the label used by Congress for the legislation on point; *i.e.,* Federal Unemployment Tax Act (FUTA), references in the brief submitted by the New Jersey Attorney General in this case, see pages 4 & 13, and the case law cited by defendant, Sea-Land in their brief at p. 21, n. 6.

between the laws before it "without seeking to ascertain the actual intent of Congress." *Ibid.*

The circumstances leading to the enactment of the amendment to § 601 in 1959 clearly indicate that the seemingly inconsistent provisions of § 601 and § 3305(f) can be read "to give effect to each" while also "preserving their sense and purpose." *Id.* at 267, 101 *S.Ct.* at 1678. According to the statement made during the Senate hearings by Alvin Shapiro, Vice President of the American Merchant Marine Institute, the need for the amendment resulted from the conflict between the provisions of § 601 (Act of March 4, 1915) protecting the wages of seamen from "attachment, encumbrance or arrestment" and the provisions of State "tax laws" which would require withholding of *local taxes* from the wages of merchant seamen. [Emphasis added.] From the focus of Shapiro's testimony it is evident that the subject of his concern was the withholding provisions in the state and local income tax laws. He specifically stated:

> A number of States have enacted withholding provisions in their *income tax laws,* and in the past few months, two important maritime states, New York and Massachusetts, have enacted such provisions in their *tax laws* ... The *income tax laws* of a number of other states contain similar provisions and there is a possibility, if not a likelihood, that the device will spread to other states and territories *and their subdivisions, such as municipalities.* [Emphasis added; S.Rep. No. 433, 86th Cong., 1st Sess. 2–3 (1959).]

Throughout Shapiro's testimony, he expressly referred to income tax laws. When referring to New York and Massachusetts, he reverted to the potentially misleading general terminology used in his opening remarks, see *infra* p. 9, and said they had "enacted such provisions in their *"tax laws."* [Emphasis added.] It is clear, from the context that the words "tax laws" were used to mean the income tax laws of New York and Massachusetts. Both times the words "tax laws" were used there were references to local or municipal withholding. Unemployment compensation taxes are not within the ambit of local or municipal government. Only states and territories are authorized to collect contributions to their unemployment program

under FUTA, and only states and territories receive contributions from the Federal government. Shapiro's statement does not address any concerns regarding withholding pursuant to unemployment compensation laws, although New Jersey had such a requirement in its Unemployment Compensation Law since 1936 [13] and had made the seamen and their shipowner employers subject to that law since 1945.[14]

This court shall not speculate as to the possible connection between the prior enactment of § 3305(f) and the absence in Shapiro's remarks of any reference to withholding pursuant to unemployment compensation laws. It is proper, however, to infer the intent of Congress in enacting § 601 from the specific concerns to which the legislation was addressed. Guided by the rationale expressed in *Watt v. Alaska, supra,* this court is persuaded that Congress did not intend the general term "tax laws", found in § 601, to mean all tax laws. In enacting the amendment to § 601 Congress sought to alleviate the concerns in the shipping industry and to remedy the split in the case law occasioned by the conflict between the 1915 version of § 601 and state income tax laws.[15] Finding no clearly expressed Congressional intent to repeal or to limit authority given to the states by § 3305(f), this court declines to interpret § 601 as a prohibition against the withholding provisions in the New Jersey Unemployment Compensation Act. Furthermore, § 3305(h) expressly allows the withholding of contributions to state unemployment compensation and temporary disability insurance programs. The interpretation of § 601 advanced by plaintiffs would, if

[13]See *N.J.S.A.* 43:21–7(d)(1).

[14]See *N.J.S.A.* 43:21–19(i)(1)(F).

[15]In *American Hawaiian Steamship Co. v. Fisher,* 82 *F.Supp.* 193 (D.Ore. 1948), the court invalidated Oregon law requiring employers to withhold income tax from wages of seaman; while in *Alaska Steamship Co. v. Mulvaney,* 180 *F.2d* 805 (9th Cir.1950), the court upheld the withholding provisions in the income tax laws of the Territory of Alaska.

carried to its logical conclusion, repeal by implication, the provisions of § 3305(g) and (h).

In the statutory framework of § 3305(g) and (h), subsection (g) incontrovertably states it is to be applied in the *same manner* and under the *same conditions* as subsection (f). From the legislative history of § 3305(g) and (h) it becomes even more apparent that Congress intended that enactment to bring seamen working for general agents of the United States within the same unemployment compensation program covering seamen working for private shippers. The Senate Committee on Finance report stated in its conclusion:

> In view of the need to provide the *same* unemployment coverage for seamen who shift their employment between privately owned and operated vessels and Government owned and operated vessels, your committee recommends the enactment of this bill. [Emphasis added; S.Rep. No. 633, 83rd Cong. 1st Sess. 2 (1953).]

Although intending § 3305(g) and (h) to extend the objectives of § 3305(f) to vessels operated by general agents of the United States, Congress clearly manifested its intent with more precise language.

The provisions of § 3305(f) that granted states the right to require seamen not only to make contributions but also to "otherwise comply" with its unemployment compensation law implicitly authorized states to require seamen's contributions to be withheld. Section 3305(h) expressly authorized withholding contributions from the wages of seamen working for the general agents of the United States. The words "otherwise comply" in § 3305(f) were expressed in § 3305(g) as an obligation to comply with "*all requirements*" of state unemployment compensation laws. [Emphasis added.] Nevertheless, since Congress clearly intended to extend the same benefits to seamen working for general agents of the United States as were afforded seamen working for private owners and operators, it would strain this court's logic to construe the words "otherwise comply" in § 3305(f) to be less comprehensive than the parallel expression "all requirements" in § 3305(g). Although Congress took pains

to expressly authorize such deductions in subsection (h) but not in subsection (f), the careful draftsmanship in subsection (h) may well be attributable to the special concerns in extending the effects of subsection (f) to employees of the United States.

Plaintiffs claim that if states are allowed to require contributions to be withheld seamen will be subject to multiple taxation. In an attempt to distinguish subsections (g) and (h), plaintiffs argue that agents of the United States, when withholding contributions to unemployment compensation programs, would not subject seamen to multiple withholding. Since seamen are likely to switch between private employment and government employment and back many times in the course of a year (see Senate Committee on Finance Report on page 12), plaintiffs' position does not withstand the litmus test of logic. Although plaintiffs' briefs may, in fact, express legitimate concerns, it is not the function of this court to re-evaluate a problem already considered by Congress or to substitute its judgment for that of the legislature.

In drafting subsections (f) and (g) Congress obviously recognized the potential for multiple taxation burdens on seamen. The solution Congress chose was to authorize only the "legislature of the State in which a person (or corporation) maintains the operating office, from which the operations of an American Vessel operating on ... are ordinarily and regularly supervised, managed, directed and controlled," to require contributions and to expressly provide that seamen "shall not be required to make contributions ... to the unemployment fund of any other state." While this solution may not cover all aspects of the multiple taxation problem, this court will not interfere with the balance struck by Congress in this area. It would be an unwarranted intrusion into legislative matters to construe § 601 as an implied repealer of the withholding provisions contained in

§ 3305 in an attempt to judicially resolve these problems.[16]

It is also worth noting that in 1982, Congress amended § 601 by adopting § 108 of the Miscellaneous Revenue Act of 1982.[17] The amendment allows the withholding of wages from a seaman pursuant to a voluntary agreement between the seaman and his employer. In the House Conference Report No. 97–929, the amendment is entitled "Withholding of State Income Tax".[18] Since this court finds more reliable indicia of the Congressional intent behind § 601, it is not necessary to expressly adopt the arguments advanced by defendants regarding the implications of this title on the entire meaning of § 601. However, it would be illogical to believe that Congress, if § 601 did in fact prohibit withholding of all taxes from seamen's wages, would authorize the voluntary withholding of income taxes and not unemployment compensation taxes.

While it is not determinative, some degree of probative value can also be found in the fact that Congress has made two amendments to § 601 and three modifications of subsections within § 3305 since 1960 when the U.S. Department of Labor interpreted § 601 to apply only to income tax laws and not to prohibit states from requiring withholding of seamen's wages pursuant to § 3305(f).[19] In *U.S. v. Clark,* 454 *U.S.* 555, 102 *S.Ct.*

---

[16]The preceding analysis of § 3305 also applied to the claims peculiar to Amerida Hess' deductions made for the purpose of contributions to the temporary disability fund. See *N.J.S.A.* 43:21–25 *et seq.* Since disability fund contributions may also be deducted pursuant to subsection (h) and since the general term unemployment compensation law used in subsection (f) is also used as the heading of Ch. 21 of Title 43 of the New Jersey Code, wherein Article 2 containing the temporary disability law is found, this court finds no distinction for the claims peculiar to Amerada Hess.

[17]P.L. 97–362; *U.S.Code Cong. & Ad.News* 1982 Vol. 10.

[18]*U.S.Code Cong. & Ad.News* 1982 Vol. 10 p. 3333.

[19]February 1, 1960 letter from Frank A. Potter, Regional Director of U.S. Dept. of Labor to Frank Judge, Director, N.J. Division of Employment Security. (See Joint Appendix p. 84.)

805, 70 *L.Ed.2d* 768 (1982), the court said the construction of a statute by those charged with its administration is entitled to great deference, particularly when that interpretation has been followed consistently over a long period of time. In the present case the Secretary of Labor has consistently approved, as required by § 3305(f), the Unemployment Compensation Law of New Jersey along with its withholding provisions. Consistent with the guidance in *Clark* is the policy that a long standing administrative interpretation, applying to a substantially re-enacted statute, is deemed to have the approval of Congress and is entitled to the effect of law. *Commissioner v. Noel*, 380 *U.S.* 678, 681–682, 85 *S.Ct.* 1238, 1240, 14 *L.Ed.2d* 159 (1965).

Since Congress has never attempted to alter the Department of Labor Regional Director's interpretation of § 3305(f) and § 601, despite subsequent amendments to those statutes, this court shall give due consideration to that interpretation.

In response to defendants' argument that unemployment compensation contributions would be difficult, if not impossible, to collect without a withholding requirement, plaintiffs argue that the deductions could be made, if necessary, from the first disability or unemployment benefit payment, if and when it becomes due. This suggestion is entirely inconsistent with the financial structure of what is essentially an insurance fund. Furthermore, it would deprive seamen of the very benefits of the system at the time when they, in all probability, would need them the most.

■ A common sense approach, aided by the rules of construction and a realistic interpretation of Congressional intent, leads to the conclusion that withholding unemployment compensation contributions from the wages of seamen is entirely proper. In reading the legislative history of § 601 and the overall statutory scheme of § 3305, this court is convinced that there is no actual conflict between the statutes. Section 601 was only intended to prohibit withholding from seamen for purposes of state and local income tax laws. Section 3305(f), as enacted, allows New Jersey

to require employers to withhold the statutorily prescribed deductions from wages of seamen.

Judgment for the defendants.